CARTEE *v.* STATE.

(Division B. Feb. 15, 1932.)

[139 So. 618. No. 29666.]

264

McIntyre & McIntyre, and B. H. Loving, all of West Point, for appellant.

266

**Eugene B. Ethridge**, Assistant Attorney-General, for the State.

**Griffith, J.**, delivered the opinion of the court.

Appellant was indicted for the murder of O. G. McGee, and on the trial was convicted of manslaughter. The testimony of the several witnesses is in conflict, some of them supporting the charge of murder; some of them made out a case of self-defense, and it might be considered that upon certain reconciliations of the testimony the verdict of manslaughter had some support in the proof. In this state of case, it was important that the instructions should be reasonably free from harmful error. We are of opinion that there were two material errors in the refusal of instructions, at least one of which was a reversible error. Inasmuch as the case must be remanded for a new trial, we make no comment on the evidence; and will state none of the facts except so much thereof as is necessary to disclose what, in our opinion, are the material errors in the record.

An affidavit had been made before a justice of the peace in district No. 5 of the county against McGee, the deceased, charging him with a misdemeanor. Mc-

Gee was a resident of said district, and it was charged that the offense was committed in that district. The justice of the peace experienced considerable difficulty in procuring service on the warrant issued by him for the arrest of McGee. Astonishing as it may seem, the record is without dispute that the officers whose duty it was to serve said warrant in said district either declined to execute the writ or else delayed and failed so to do. After a delay of some two months, it was ascertained by the justice of the peace that McGee was at this later time working at a sawmill in district No. 4 of the county, and another warrant was issued and placed in the hands of appellant, Cartee, who was the constable of said district 4. Appellant soon thereafter, in said district 4, severed the warrant upon McGee, as a result of which McGee executed an appearance bond in the sum of one hundred dollars with J. E. Elmore and R. L. Young as sureties, conditioned for the appearance of said principal at the next term of the justice court and from day to day and from term to term until discharged by law.

But McGee did not appear at the next term as his bond required him to do. The justice of the peace, however, did not take a forfeiture on the bond, and instead he notified appellant, the constable, who had taken the bond, that a forfeiture would be taken at the succeeding term unless the principal should then appear; and the said constable was requested to notify the sureties on the bond to that effect. According to the undisputed testimony, Young was the only surety on said bond who was solvent. Appellant at once notified the said surety, Young, of the foregoing; and Young thereupon stated to the appellant that, in view of the failure of his principal to act within the terms of the bond, he (Young) desired to surrender said principal at once, and thus be discharged from said bond. It was ascertained that on this day the principal was not at the sawmill in district 4, but was at his home in district 5. The surety, Young, requested

appellant, the said constable of district 4, to accompany
him (Young) at once into district 5 thereto to receive
the surrender of said principal. Appellant agreed to
do so, and forthwith these two departed, in company with
each other, to the residence of the principal in district
5; and arriving there, or in the near vicinity thereof,
they met the principal; and the said surety then and
there, in the presence and hearing of the principal and
in the presence of the said constable, informed the said
principal and said constable, by a definite and sufficiently
formal announcement, that he was then and there sur-
rendering said principal, and did so surrender him, and
then and there requested the said constable to accept said
surrender and to arrest said principal. The said con-
stable then attempted to execute the directions of the
surety, and in the course of the events immediately tran-
spiring the principal was killed by the constable.

It is contended by appellant that the court erroneously
excluded a considerable part of the testimony of the
justice of the peace, who was questioned in detail re-
specting the difficulties had in procuring service of pro-
cess. This testimony tended to show that the deceased
had assumed a hostile attitude toward officers of the law.
Appellant contends that this testimony was of a con-
nected series of events which served to show or explain
the attitude and conduct of the deceased at the time of
the homicide and to elucidate the part that the deceased
enacted therein, and appellant relies on McCormick v.
State, 159 Miss. 610, 132 So. 757. The same question has
been recently considered by this court in Lee v. State,
160 Miss. 618, 134 So. 185, and in Daniels v. State, 136
So. 725. The rule in respect to anterior events is succinct-
ly stated in the McCormick case, and as accurately as
we can phrase it. As disclosed in the Lee case, the stated
rule is to be applied liberally in the interest of justice
in each case, and is not to be held to strictness. Some
discretion, however, must be allowed to the trial judge,

whose duty it is to see that trials are not taken into distinctly collateral issues or into matters which are substantially immaterial or irrelevant. The main trouble with the excluded evidence was that some of it was hearsay, much of it was inconclusive, that is to say, proved nothing, and but little of it was of material value. However, there were some portions of that which was excluded in this evidence which should have been admitted, and on a new trial, the discussions by the court in the McCormick and Lee cases, with the authorities therein cited, will furnish dependable guides.

The state took the position in this prosecution that the constable of district No. 4, the appellant here, was without any authority of law in attempting to arrest the deceased in district No. 5, even at the request and by authority of the surety on the appearance bond; and the trial court upheld that theory. The court thereupon refused the following instruction requested by appellant: "The court charges the jury for the defendant that Bob Young, the surety upon the bond of McGee, had a legal right to surrender McGee to Cartee; and when Young, speaking to McGee, told him that he, Young, was off of McGee's bond, in the presence of Cartee, and then and there Young, in the presence of McGee, speaking to Cartee, told Cartee to take charge of McGee, it was then and there the duty of Cartee, as constable of the county, to then and there arrest McGee."

It was of vital importance that the jury should be informed that appellant, in attempting the arrest or in the taking of the deceased into custody, was acting lawfully; that is to say, within the authority of law. Appellant had the right to have the jury instructed that he was not a trespasser in accepting the surrender from the surety and in attempting to make the arrest, and in effect that the deceased had no right to resist the arrest, so long as the arrest, as such, was being made in a proper manner. Sections 1250 and 1251, Code 1930,

provide for the surrender of the principal by the surety on an appearance bond in a criminal case, and the concluding clause of section 1250 is that "bail may arrest their principal anywhere or authorize another to do so." These sections are, in substance, declaratory of the common law. In Taylor v. Taintor, 16 Wall. 366, 371, 21 L. Ed. 287, the Supreme Court of the United States said: "When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they chose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner." There is an interesting recent review of this subject in Fitzpatrick v. Williams (C. C. A.), 46 Fed. (2d) 40, reprinted in 73 A. L. R. 1365, with elaborate annotations, which disclose that it is not necessary to the operation of this rule that the principal shall have actually been imprisoned, and thence bailed. It is sufficient if his surety by his bond kept him from going to jail.

It was therefore error, and reversible error, to refuse to instruct the jury upon this important phase of this case and in accord with the stated rule of law on the subject. It is true that the requested instruction contained the recital that it was the duty of the constable to make the arrest, rather than what may be considered as the more correct recital that it was the lawful right of the constable then and there to do so. We do not now decide as an abstract proposition whether it is the general duty of a constable to accept, outside of his own district, the surrender of a principal by his

bail; but we hold that inasmuch as the constable had that right, and had accompanied the bail upon an agreement so to do, it then became his duty to perform the service which he had the right and had expressly agreed, to do.

When the bail surrendered the principal to the constable, the latter informed the principal that he would have to go with the constable before the justice of the peace and make some new arrangement in the matter. The testimony shows that the principal then and there stated that he did not intend to go anywhere, and defied the officer to take him. The testimony further shows that the principal then went to the railroad depot and arranged to borrow the money which, as he supposed, would cover the fine and costs of the pending criminal charge, and which he proposed to tender the constable in discharge of his arrest. But the case had not been tried, and there had been no adjudication of the fine, if any there was to be, and, of course, there had been no final fixation of the costs. To meet this situation, appellant requested the following instruction, which was refused by the court: "The court instructs the jury for the defendant that Cartee, as constable of the county, was without authority of law to accept money from Mc-Gee in settlement of the criminal charge against McGee."

It was error, in the state of case here presented, to refuse that instruction. The attorney-general in his brief has made no attempt to defend or justify the error, and we must, therefore, assume that he could find none for it; and so far as we can see from this record there was no reason for the refusal. The instruction manifestly states a correct and a materially applicable point of law.

The court at the instance of the state gave an instruction that the jury might return either of three verdicts, that is, guilty of murder, guilty of manslaughter, or not

guilty. Appellant thereupon requested the two following instructions upon the subject of compromise verdicts:

"The court charges the jury for the defendant that if they believe from the evidence or have a reasonable doubt thereof that the defendant was justifiable in taking the life of the deceased or if they believe from the evidence or have a reasonable doubt thereof that the defendant acted in the real or apparent self-defense then the court says to the jury positively, that they should not return a compromise verdict of manslaughter, but should return a straight verdict of not guilty, and that no juror should agree to a verdict of manslaughter as a compromise when such jury believes from the evidence or has a reasonable doubt thereof that the defendant was justifiable in taking the life of the deceased."

"The court charges the jury for the defendant that it is the sworn duty of every juror to vote on each and every ballot of the jury for an acquittal of the defendant, until and unless the mind of such jurors is convinced beyond all reasonable doubt and to a moral certainty from the evidence or the want of evidence, of the guilt of the defendant, and that a juror cannot under his oath as a juror compromise his honest convictions from the evidence, or for the want of evidence as to the guilt or innocence of the defendant, for the purpose of bringing in a verdict, but that under his oath and under the law that a juror should never surrender such conviction from or because of anything or reason whatsoever or for any purpose whatsoever as long as his conviction from the evidence or the want of evidence in the case."

There is no wide difference of opinion in the decisions that compromise verdicts, when they are actually by compromise, are not within the law. A defendant has the right to stand or fall upon his defense as made, and has a right to have the jury properly instructed against a compromise verdict. We had occasion recently to

review this question in Speaks v. State, 136 So. 921, wherein we held that it is reversible error to refuse a correct instruction on that point. But the instructions requested by appellant were properly refused because they omitted the essential element that the conviction which the juror entertains and upon which he acts must be that which he retains "after consultation and deliberation with his fellow jurors." It is the benefit that is derived by the consultations and deliberations of the jurors among and with each other, bringing to bear upon the issues many intelligent minds and memories, which causes the law to retain so great a number as given as twelve on the jury; otherwise, it would be as well or even better, to have only five or three.

Appellant complains also of instruction No. 1 granted at the request of the state. This instruction is in the exact language of the first instruction quoted in the recent case of Smith v. State (Miss.), 137 So. 96, 98, and which the court there criticized; and although it was held that the instruction, if the only error, would not be sufficient to reverse, the court said at the same time that the instruction should not be given. Other errors are also assigned, but, if errors, they were not harmful, and we do not deem them as applied to this record of a sufficient importance to require discussion.

Reversed and remanded.