437 So.2d 430 (1983)
George Horace HUBBARD and Billy Dean Hubbard
v.
STATE of Mississippi.
No. 53828.
Supreme Court of Mississippi.
September 14, 1983.
Rehearing Denied October 5, 1983.
*432 Duncan Lott, Langston & Lott, Booneville, Harry L. Kelley, Jackson, for appellants.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
PRATHER, Justice, for the Court:
George Horace Hubbard was charged with murder of Walter Eugene Hall, convicted of manslaughter, and sentenced to twenty years in the Mississippi Department of Corrections. Billy Dean Hubbard and George Horace Hubbard were charged and convicted of aggravated assault on William Kyle Livingston and each sentenced to twenty years. From these convictions in the Circuit Court of Tishomingo County, the defendants appeal assigning the following errors:
(I)
Limitation of the defendants' right of cross and re-cross examination of several state witnesses.
(II)
The Court's admonishment against defense counsel before the jury panel.
(III)
The admission into evidence of guns not used in the commission of the crimes charged.
(IV)
The introduction of gruesome photographs of the deceased.
(V)
The allowance of testimony of a state witness, whose name nor report was provided to defense attorneys under the pretrial discovery.
(VI)
The denial of a motion for mistrial due to a prejudicial statement made by a state's witness.
(VII)
The submission of an instruction on manslaughter.
(VIII)
The granting of an improper instruction regarding the rights of bail bondsmen *433 and the failure to instruct as to the obligation of bail bondsmen to adhere to state laws.
(IX)
The denial of motion for mistrial or the failure to instruct the jury to disregard state attorney's reference to the non-existent testimony.
(X)
The denial of defendant Billy Dean Hubbard's motion for acquittal of aggravated assault for lack of evidence.
We affirm the convictions on all charges.
On August 11, 1979, George Horace Hubbard was arrested for parading without a permit during a "klan" march in Montgomery, Alabama. Bail bond was posted by William Kyle "Sonny" Livingston for his release. For Hubbard's failure to appear in court, a bond forfeiture was taken in the amount of $2,000.00.
Livingston, with two employees, A.C. Chapman and Walter Eugene "Buddy" Hall, came to Mississippi on January 19, 1980, to return Horace Hubbard to court in Alabama. They asked one Mississippi police officer as to Hubbard's whereabouts and were advised that Hubbard had not been seen for several months.
On that evening George Horace Hubbard was advised by his brother, Billy, that some people were looking for him with warrants. A telephone call was made by Horace Hubbard to the sheriff to inquire as to any outstanding warrant, and the sheriff advised him that he had none.
Livingston, Chapman, and Hall located Hubbard's home on the next morning. Livingston, with a handgun and a 12 gauge double barrelled shotgun, and Hall, with a 38 special stub-nosed Charter Arms light-weight pistol, stayed in the woods near the home to observe the activity there while Chapman went to get the sheriff.
Before the sheriff arrived, Horace and Billy Hubbard left the trailer home and discovered the two armed men nearby. The details of this encounter were disputed. Livingston testified that he told Hubbard he wanted to talk to him; that he wanted no trouble. Horace Hubbard drew his rifles, and Livingston leveled his shotgun. Hubbard testified that he recognized Livingston, and backed his car away, and "thought" he heard a gunshot from one of the Alabama men.
Upon return to his home, Horace Hubbard telephoned the sheriff's office. The sheriff's dispatcher quoted Hubbard's statement to be that he was going to kill two men if the sheriff didn't get there in five minutes.
After about a thirty minute wait, Horace Hubbard and his brother Billy left the trailer to return to the location of the Alabama men. They took with them a Western Field brand, Model 740, lever action 30-30 rifle with scope and a Remington brand, model 700, 7 MM Magnum bolt-action rifle with a telescopic sight.
The evidence conflicted as to the firing of the initial shot, but numerous shots were fired. After the shooting subsided, Ronnie Hubbard, son of Billy Dean Hubbard, drove up with two additional guns.
The sheriff, his deputies, and Chapman arrived to find both Livingston and Hall wounded. Hall subsequently died as a result of the shoulder wound made by a projectile fired from Horace Hubbard's Remington rifle.
After indictment and trial, the defendants challenge several court rulings which allegedly precluded their receiving a fair trial.

1A.
The first question to be decided is whether the court's limitation of the witness examination to direct, cross and redirect examination, denies a defendant his constitutional right to confront witnesses against him. The trial court permitted no recross examination of any witness.
The Mississippi Constitution grants and guarantees to an accused in a criminal prosecution the right to confront witnesses *434 against him. Article 3, Section 26 of the Mississippi Constitution, 1890. The constitutional right of confrontation of witnesses encompasses the right to cross-examine them. Spears v. State, 241 So.2d 148 (Miss. 1970); Butler v. State, 245 So.2d 605 (Miss. 1971); Hamburg v. State, 248 So.2d 430 (Miss. 1971).
However, the assertion here by the defense is that restriction on recross examination is a constitutional violation. Based upon our constitution and case law we disagree. The rule to be applied to recross examination is that:
It is proper to exclude questions as to matters which were not opened up or brought out on redirect examination, or as to matters already fully covered, or discussed at length on cross-examination, where there is no claim of oversight and no reason stated why the matter was not inquired into on the cross-examination proper. 98 C.J.S. Witnesses § 429.
Although the determination of this question is based on Mississippi constitutional and case law, we compare our decisions with other jurisdictions. See Kinser v. Cooper, 413 F.2d 730 (6th Cir.1969) (no federal constitutional denial in limitation on right to recross examine prosecution witness). It has also been held that recross examination is not allowable as a matter of right, but a matter of trial court discretion. Nelson v. State, 257 Ark. 1, 513 S.W.2d 496 (1974).
The defense relies upon Valentine v. State, 396 So.2d 15 (Miss. 1981), in which this Court reversed and remanded for a new trial where the trial court restricted cross-examination. This case is factually distinguishable as it applied to cross-examination, not recross.
In analyzing the record of this case, however, the Court is of the opinion that full cross-examination was permitted by the trial judge. The court's ruling applied to recross examination, and the court applied the restriction equally to both defense and prosecution. Recross examination may be limited by the trial judge in his sound discretion. No abuse of discretion is present in this denial of recross examination. We find no merit in this assignment.

1B.
Appellants contend that prejudicial error was committed when they were not allowed to cross-examine Sonny Livingston concerning statements Livingston made to Al Jernigan or Sheriff Bates subsequent to the shooting. The applicable rule of law for this assignment has been previously stated. We turn to the facts.
Defense counsel attempted to impeach witness Livingston with a prior inconsistent statement. However, the record reveals that Livingston was asked the question and denied making the statement sought to be elicited. There was no objection made by the prosecutor. Cross-examination was not denied or impeded. Fisher v. State, 150 Miss. 206, 116 So. 746 (1928). However, defense counsel did not recall the witnesses to whom the statement was purportedly made for the purpose of impeachment. Therefore, no error was committed.

1C.
Appellants claim error in that they were denied the right to cross-examine Officer Dickerson about statements made to him by A.C. Chapman and that such a denial was prejudicial error. When Dickerson was asked to divulge the substance of the statements made to him by Mr. Chapman, obviously for impeachment purposes, the prosecution's objection was sustained on the ground of hearsay.
In Mississippi in order to impeach a witness with a prior inconsistent statement, a proper predicate must be laid. In Carlisle v. State, 348 So.2d 765 (Miss. 1977), we explained that "in laying the predicate to introduce prior inconsistent statements of a witness, the questions should include whether or not on a specific date, at a specific place, and in the presence of specific persons, the witness made a particular statement." Id. at 766. Also, if a witness testifies either on direct or cross-examination "the adverse party for the purpose of *435 impeaching his testimony, may show that the witness has made previous inconsistent or conflicting statements either by eliciting such statements upon cross-examination of the witness himself, or by proving them by other witnesses." Hall v. State, 250 Miss. 253, 264, 165 So.2d 345, 350 (1964).
In this case, the appellant attempted to impeach A.C. Chapman before Chapman had an opportunity to admit or deny the statement. Since the proper foundation had not been laid, objection to questions concerning the statement or statements was properly sustained. The defense attorney indicated that he would recall Officer Dickerson so that the impeaching statement could properly be shown. However, no inconsistencies were shown which would have warranted the use of another witness for impeachment purposes.[1] We find no merit to this assignment.

II.
The appellants argue that they were denied a fundamentally fair and impartial trial when the trial judge admonished defense counsel before the jury, as follows:
Q. All right, have you at any time since that one night checked out the background of Sonny Livingston?
A. No, sir, I have not.
Q. You have not run an NCIC check or an FBI check on him?
A. No, sir, I have not.
Q. And even though I suggested that to you in the preliminary hearing in this case, you still haven't run one.
PROSECUTOR: Your Honor, I am going to object. The officer certainly doesn't have to follow the suggestions of Mr. Langston.
TRIAL JUDGE: Objection overruled.
DEFENSE COUNSEL:
Q. Why did you not run one?
A. Well, again, I conferred with the County Attorney, Mr. Jernigan, and he didn't feel it would be necessary to run any. He felt like they have a legitimate,  with a legitimate company and it wouldn't be necessary, and I followed his suggestion.
Q. All right. Let me ask you this, Mr. Dickerson. If you had known at the time these charges were being filed, if you had been aware of over twenty years of violence 
PROSECUTOR: Objection, Your Honor.
TRIAL JUDGE: Objection sustained.
DEFENSE COUNSEL: Of Sonny Livingston, 
TRIAL JUDGE: Just a moment, I sustained the objection,
BY DEFENSE COUNSEL
Q. If you had known at the time that you were filing these charges that Sonny Livingston had bombed a Baptist 
BY THE PROSECUTOR: Objection.
BY DEFENSE COUNSEL:  Church in Montgomery, Alabama  [1A] Just a moment, you proceed with that and I will put you in contempt of Court and put you in jail. I had already sustained the objection.
BY DEFENSE COUNSEL: Sir?
BY TRIAL JUDGE: I had already sustained the objection.
BY DEFENSE COUNSEL: Well, that's a different 
BY PROSECUTOR: What he said is not true.
BY DEFENSE COUNSEL:  question.
BY TRIAL JUDGE: I don't believe so; you may proceed.
BY DEFENSE COUNSEL: Well, I would like for the record to reflect 
BY TRIAL JUDGE: The record will reflect just what was said.

*436 BY DEFENSE COUNSEL: Well, I'd also like for it to reflect, Judge, that I object to the attitude you took toward me in front of the jury.
BY TRIAL JUDGE: The record will reflect exactly what was said. You may proceed.
BY DEFENSE COUNSEL: Thank you, Judge.
The appellants argue that admonishing the defense counsel in this manner in front of the jury prevented them from receiving a fair and impartial trial. We disagree.
The decision in Parker v. State, 401 So.2d 1282 (Miss. 1981), is controlling on this point wherein we held that:
Ordinarily counsel may not complain of slight or not seriously prejudicial impropriety in remarks or comments by the court where they are provoked by himself.
[Id. at 1285].
[Vail v. City of Jackson, 206 Miss. 299, 40 So.2d 151, 41 So.2d 357 (1949)].
Here, we are concerned with statements made to the defense counsel after he persistently attempted to have evidence placed before the jury after State's objections had been sustained several times. The Court finds no error as the defense counsel provoked the Court's comments.[2]

III.
The admissibility into evidence of a pistol and a shotgun found at the scene of the shooting, but not used in the murder or assault charges, is assigned as error. The two weapons were brought to the scene by Ronnie Hubbard, who was not charged with any crime.
The standard to be applied for admissibility of such evidence is found in Wilkins v. State, 264 So.2d 411 (Miss. 1972), wherein this Court stated:
Our Court has permitted the introduction of articles used in the commission of crime from our early history. Strickland v. State, 220 Miss. 71, 70 So.2d 1 (1954); Sims v. State, 209 Miss. 545, 47 So.2d 849 (1950); Davis v. State, 170 Miss. 78, 154 So. 304 (1934).
On the other hand, articles such as tools and weapons found near the place or scene of crime or near the place where the defendant was arrested, have been admitted in evidence. Pendergraft v. State, 213 So.2d 560 (Miss. 1968). This is true even where it is not claimed nor proved that they were used in the commission of the alleged crime in cases where the evidence has probative weight, or where they constitute a part of the surrounding scene or picture, or are a part of the circumstances of the arrest. Busbee v. State, 36 Ala.App. 701, 63 So.2d 290 (1953); 22A C.J.S. Criminal Law § 712, p. 966 (1961).
[Id. at 413].
We held that it was "within the sound discretion of the trial judge as to whether or not burglary tools found near the scene of a burglary are near enough in time and place to be of a probative evidentiary value." Id. at 414.
In the case sub judice, several weapons were used and found at the scene moments after the occurrence including the two brought there by Ronnie Hubbard. These weapons are sufficiently within the Wilkins rule to be admitted into evidence, and we hold the trial court's ruling proper.

IV.

Did the trial judge abuse his discretion in receiving into evidence photographs of the deceased picturing the shoulder wound?
This Court has held numerous times that admission of photographs is left up to the sound discretion of the trial judge and will not be disturbed unless it is shown that the discretion was abused. Smith v. State, 419 So.2d 563 (Miss. 1982); Edwards v. *437 State, 413 So.2d 1007 (Miss. 1982); Cessna v. State, 381 So.2d 173 (Miss. 1980); Jones v. State, 367 So.2d 458 (Miss. 1979).
In King v. State, 408 So.2d 1375 (Miss. 1982), there was some doubt as to the decedent's posture when he was stabbed. Pictures of the decedent depicting his stab wound was admitted into evidence, and we affirmed. The "photograph had some evidentiary value, and it was not inordinately gruesome to an adult jury acquainted with the norms of life and death... . The court did not abuse its discretion in permitting its introduction." Id. at 1376.
In the case at bar, there is also some dispute as to the posture of Walter Hall at the time he was shot. Thus, the two pictures had probative value concerning the angle and line of fire. This being so, the trial court did not abuse its discretion by admitting the pictures into evidence. Briggins v. State, 416 So.2d 691 (Miss. 1982).

V.
The appellant, Horace Hubbard, argues that he was prejudiced by the admission of the testimony of expert witness whose name was not furnished to appellant pursuant to motion and order of discovery under Mississippi Uniform Criminal Rule of Circuit Court Practice 4.06.
The pertinent part of the rule[3] invoked in the lower court reads as follows:
The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial;
(2) Copy of any recorded statement of the defendants to any law enforcement officer.
Upon a showing of materiality to the preparation of the defense, the court may require such other discovery to defense counsel as justice may require.
... .
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
Mike Allen, a ballistics expert from the Mississippi Crime Laboratory, was called for the purpose of identifying the projectile taken from the body of the deceased with one of the weapons found at the scene.
The appellants made a timely objection based on the State's failure to give Mr. Allen's name prior to trial. The trial judge, citing rule 4.06, called a ten minute recess to allow the appellants' attorney to interview Mr. Allen and inspect any documents from which Mr. Allen might testify.[4] After the recess, Mr. Allen testified without further objections or requests on behalf of the appellant. Mr. Allen subsequently testified that the projectile from the deceased's body was fired from a rifle owned by Horace Hubbard or either one just like that one.[5] It should be noted that the record of the proceedings below revealed that the defendant did not provide reciprocal discovery to the State as required by rule 4.06. We find no reversible error.
This Court affirmed a murder conviction notwithstanding non-compliance of Rule
*438 4.06. Gallion v. State, 396 So.2d 621 (Miss. 1981).
We decide that there is no reversible error in this case because there was no unfair surprise. Our most recent decision interpreting Rule 4.06 is Box v. State, 437 So.2d 19 (Miss. 1983), where a conviction of robbery was reversed. The undisclosed witness was the only independent witness[6] who connected the defendant with the robbery. The case sub judice is factually distinguishable in that the witness testified as to the weapon from which the fatal bullet was fired. Horace Hubbard admitted shooting at Hall; therefore, this fact was not in issue. The defense was self-defense. We find no reversible error.

VI.
The appellants claim prejudice from a State witness's reply during cross-examination. Defense counsel asked when and where Livingston had seen Horace Hubbard. Livingston replied, "... the police had arrested a bunch of people, Klan march, and he was getting off the bus." Defense counsel asked that the jury be excused. He then moved for a mistrial arguing that because of the racial make-up[7] of the jury, the reference to the "Klan march" would prejudice the jury. The motion was denied. Upon return to the jury, the court instructed jurors to disregard any statement of incidents that occurred in Alabama. As requested by defense counsel, the court made no additional reference to "Klan" in his admonitions. Holifield v. State, 275 So.2d 851 (Miss. 1973).
In this state, cases are reversed because of inflammatory testimony where a pattern of prosecutorial misconduct as well as clear prejudice to the defendant is shown. Branch v. State, 347 So.2d 957 (Miss. 1977). Also, when a trial court instructs the jury, it is presumed that the jurors follow his direction. Whitlock v. State, 419 So.2d 200 (Miss. 1982). Here, the witness's remark was inadvertent. The claim of prejudice by defense is presumed to be overcome by the court's admonition to the jury. We find no reversible error in this assignment.

VII.
The appellant, George Horace Hubbard, next contends that the granting of a manslaughter instruction was error where he is charged with murder and he claims self-defense. Appellant argues that the verdict should have been either guilty of murder or not guilty.
This Court has addressed this proposition previously. Where there is evidence to justify a murder conviction, the appellant cannot complain of a manslaughter conviction. Calicoat v. State, 131 Miss. 169, 95 So. 318 (1923); Lowry v. State, 202 Miss. 411, 32 So.2d 197 (1947).
In Lowry, supra, we reviewed cases where the killings were admitted by the defendant, but whose defenses were justification, self-defense, accident, or insanity. We also reviewed cases where the defendant had denied commission of the homicide. This Court approved the rule that in either situation, "where the evidence was sufficient to support a conviction of murder ... [a defendant] should, therefore, not be heard to complain that he was granted a verdict of [manslaughter] since he was not prejudiced by the lighter punishment." Id. at 417, 32 So.2d 199. Also, see Mallette v. State, 349 So.2d 546 (Miss. 1977).
In the recent case, Grace v. State, 379 So.2d 540 (Miss. 1980), this Court held:
Aside from that, this case is controlled by the principle of law that where a defendant is convicted of manslaughter upon an instruction granted by the state to that effect and the evidence would have justified a conviction of murder, the instruction on manslaughter, even if not authorized by the evidence, does not constitute reversible error. [Id. at 542].
*439 Citing West v. State, 233 Miss. 730, 103 So.2d 437 (1958), Graham v. State, 195 Miss. 291, 15 So.2d 478 (1943). See also Cole v. State, 405 So.2d 910 (Miss. 1981). This argument is without merit.

VIII.
The right of bail bondsmen is the subject of the next assignment. Appellants contend that an instruction granted the State was an improper statement of Mississippi law. Our statutory authority which authorizes a surety to arrest and surrender the principal is Miss. Code Ann. § 99-5-27 (1972):
Bail may, at any time before final judgment, surrender their principal, in vacation to the sheriff, or in open court, in discharge of their liability; but if this be done after forfeiture of the bond or recognizance, the breach of the bond or recognizance must be satisfactorily excused before the court, and all costs be paid by the bail, and such part of the bond or recognizance as the court orders. Upon surrender, the sheriff in vacation, and the court in term-time, may discharge the prisoner on his giving new bail, but if he does not give new bail, he shall be detained in jail. Bail may arrest their principal anywhere or authorize another to do so.
The above provisions are declaratory of the common law. Cartee v. State, 162 Miss. 263, 139 So. 618 (1932).
The instruction[8] granted the State was verbatim of our statement of the law in the Cartee case, supra. In Cartee, it was held reversible error to refuse to instruct the jury as to the common law rights of bail bondsmen.
Appellants contend that this instruction places bail bondsmen above the law and that it misled the jury into thinking that the appellants were defenseless against these bondsmen. Their authority relies upon two Alabama cases which are based upon Alabama statutory law and not applicable here. Livingston v. Browder, 51 Ala.App. 366, 285 So.2d 923 (1973), Shine v. State, 44 Ala.App. 171, 204 So.2d 817 (1967), Ala. Code Tit. 15, § 209 et seq. As to the contention that the jury was misled into believing that the appellants were defenseless, the record reflects five self-defense instructions granted the defense.
The appellants charge that this instruction placed the bondsmen above the law and was in violation of the appellants' constitutional rights.
However, an analysis of the argument indicates that we must look to the derivation of right. This right to arrest a principal by the surety arises "from the relationship between principal and his bail." 8 Am.Jur.2d Bail and Recognizance, § 119 (1980). It does not come from the state through subrogation. We find no reversible error.

*440 IX.
Appellants argue that the prosecutor referred to nonexistent testimony in closing argument and that a mistrial should have been granted. The general rule in this state is that:
[I]t is the duty of the district attorney to prosecute a case with diligence, he should guard against doing or saying anything that would prejudice the minds of the jurors and tend to cause them to decide a case on something other than the evidence. In his argument to the jury he should not inject statements of facts and conclusions not justified by the evidence. It is a part of his duty to see that the defendant as well as the State receives a fair and impartial trial. McCaskill v. State, 227 So.2d 847 (Miss. 1969); Adams v. State, 202 Miss. 68, 30 So.2d 593 (1947); Allen v. State, 175 Miss. [745] 145, 166 So. 922 (1936).
A.C. Chapman testified that his .38 pistol which he had given to Walter Hall, had been fired once several months before this shooting occurred and had never been reloaded. When this gun was recovered at the scene of the shooting, it contained only one spent cartridge. There were no lab tests made on this weapon.
During closing argument, defense counsel commented that no test had been made on the .38 caliber pistol to determine how long ago the spent shell had been fired. The prosecutor then told the jury that there was no such test that could determine how long ago a pistol had been fired. Defense counsel objected that the prosecutor's remarks were outside the evidence.
The remark complained of here was invited by the defense counsel and under these circumstances, the appellant cannot complain. Ransom v. State, 149 Miss. 262, 115 So. 208 (1928); Cannon v. State, 190 So.2d 848 (Miss. 1966).
It should also be mentioned that both, defense counsel and the prosecutor as well as the judge had admonished the jury that counsel's argument should not be considered evidence. Holifield v. State, 275 So.2d 851 (Miss. 1973). We find no error.

X.
The last argument posed by Billy Dean Hubbard is that it was error to deny a motion for acquittal as to the aggravated assault charges against him. Appellant argues that there were no facts in evidence which linked Billy Hubbard to the aggravated assault of Sonny Livingston. This argument is without merit.
To determine whether the verdict against Billy Hubbard is supported by the evidence, we must view all evidence supporting or tending to support the verdict, together with all inferences supportive of the verdict which reasonably may be drawn therefrom as true. Aldridge v. State, 398 So.2d 1308 (Miss. 1981).
From the testimony of Horace Hubbard there is sufficient evidence from which the jury could infer that Billy Dean Hubbard fired his rifle and was the person who shot Sonny Livingston. Therefore, this verdict must be affirmed. We find no error.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, DAN M. LEE and ROBERTSON, JJ., concur.
HAWKINS, BOWLING, DAN M. LEE and ROBERTSON, JJ., specially concur.
HAWKINS, Justice, specially concurring:
On the assignment of error of the state's violation of Rule 4.06 of the Criminal Rules, I concur with the majority under the facts of this case, for the following reasons:
There was a blatant disregard of Rule 4.06 by the defense, in that the names of no defense witnesses whatever were furnished the state by the defense, as defense counsel were required to do under this rule.
When the defense objected to Allen testifying, or the introduction of his report, the circuit judge literally applied the provisions of this rule. He stopped court proceedings, gave defense counsel all the time they needed *441 to talk to the witness and review his report. Following this interview, the defense offered no further objection to this witness testifying, and his minimal cross-examination by the defense did not question the validity of his opinion.
It is clear from this record that counsel did not consider Mr. Allen's testimony any threat to the theory of the defense. They initially objected to his testifying, but after a brief interview, were satisfied. They made no further statement to the circuit judge to indicate a need or desire for a continuance, or any further relief because of the state's failure to furnish his name.
Where the state has violated a discovery rule, I do not think an accused upon appeal should be required to demonstrate that, absent this violation, he may have been acquitted (or "must show prejudice," whatever that means). On the other hand, when our review of the record leaves no doubt the error assigned had no significance whatever in the trial, we are not obligated to reverse the case.
BOWLING, DAN M. LEE and ROBERTSON, JJ., join this opinion.
NOTES
[1] The statements concerned with herein is whether or not Chapman told Dickerson that Mr. Hall had a pistol when he was dropped off at the scene by Mr. Chapman. When the cross-examination of Mr. Chapman took place, he admitted giving Walter Hall his gun before dropping Hall off at the scene. He had also admitted this during his direct examination.
[1A] In the transcription here, the court reporter evidently omitted the reference "By the Trial Judge."
[2] The appellants rely upon Ladnier v. State, 254 Miss. 469, 182 So.2d 389 (1966), wherein we reversed a conviction because the trial judge's remarks were "so marked and severe that it could not have failed to make an impression upon the jury." Id. at 182 So.2d 391. Ladnier is distinguishable from the case sub judice. Ladnier dealt with remarks made by the trial judge directly to the defendant while the defendant was testifying in his own behalf.
[3] Rule 4.06 was amended effective October 26, 1982. We are concerned with the rule in its form at the time of this trial. Nothing in the amendment alters the parts of Rule 4.06 construed here.
[4] We are concerned only with the testimony of Mr. Allen since there were no documents or reports offered by him relating to the ballistics tests.
[5] The defense offered by Horace Hubbard was self-defense. He admitted firing the 7 MM rifle at Walter Hall.
[6] The only other witnesses connecting Box with the robbery were his co-indictees Robyn Russell and Timothy Davis.
[7] There was one member of the Black race on the jury.
[8] The purpose of an appearance bond in a criminal case is to insure the presence of the Defendant in Court without keeping him confined in jail. Under the terms of the bond, the Defendant, known as the Principal, agrees to pay to the Court a sum of money if he fails to appear at the required time. Any other person besides the Defendant who signs the bond and thereby insures the performance of the Defendant is known as a surety.

When bail is given for one charged with a crime in the manner just described, the Defendant, or Principal under the bond, is regarded as delivered to the custody of his sureties. Whenever his sureties choose to do so, they, or their agents, may arrest the Defendant wherever he may be and deliver him to the proper authorities, and if that cannot be done at once, they may imprison him until it can be done. They may pursue him into another State, and if necessary, may break and enter his house for the purpose of arresting him. No warrant or other process is necessary for the sureties or their agents to take these actions; they have their authority by virtue of the bond they gave which kept the Defendant from going to jail.
The Court instructs you, therefore, that William Kyle Livingston, Walter Eugene Hall and A.C. Chapman as agents and employees of Sonny Livingston Bail Bonds, the surety on the bonds of Horace Hubbard in the Municipal Court of Montgomery, Alabama, had the right and authority of law to pursue Horace Hubbard into the State of Mississippi and to go to his house, and to even enter his house if necessary to arrest him and return him to the proper authorities in Montgomery, Alabama. Furthermore, the Defendant, Horace Hubbard, had no right to resist the attempted arrest as long as it was being made in a proper manner.