SULLIVAN, Presiding Justice,
dissenting:
I cannot concur with the majority reasoning in several particulars, and therefore dissent. This dissent also applies to 94-DP-00761 except for the section dealing with prior conviction as an aggravating factor.
I.
THE TRIAL COURT ERRED BY REFUSING TO ALLOW CROSS-EXAMINATION OF SHERIFF WARREN ON HIS EXTORTION CONVICTION.
In Crapps v. State, 221 So.2d 722, 723 (Miss.1969), this Court stated that the Sixth Amendment to the United States Constitution established the right to confrontation. In Hubbard v. State, 437 So.2d 430, 433-34 (Miss.1983), this Court stated that the Mississippi Constitution, Article 3, Section 26, grants and guarantees a criminal defendant the right to confront witnesses against him. See also Stromas v. State, 618 So.2d 116, 121 (Miss.1993). The right of confrontation “extends to and includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony.” Myers v. State, 296 So.2d 695, 700 (Miss.1974).
The majority is incorrect in holding that the trial court did not abuse its discretion when not admitting Sheriff Warren’s conviction for extortion. The trial court did not allow the conviction because the conviction was in 1989 and the sheriff originally testified in 1982. However, the trial court fails to take into account that the hearing was held in 1994. Therefore, if the sheriff had been able to testify at trial in 1994, then he would have been able to testify to the prior 1989 conviction for extortion.
The sole reason that the trial judge excluded the evidence is found in the transcript of the trial proceedings while the jury was adjourned. It reads in part, “Well gentlemen, we are retrying events that occurred in 1982. The fact that we are here in 1994 rehashing those matters, to me, is of no consequence. It is dictated by the fact that in 1982, the crime occurred. In 1982, there was a trial. In 1982, Sheriff Warren testified.” However, the transcript was read in 1994 before a 1994 jury. The jury is directed to give Sheriff Warren’s transcribed testimony equal weight as other live testimony. If Sheriff Warren had been able to testify in 1994, he would have been able to testify as to his conviction of extortion in 1989.
Prior convictions are admissible to impeach a witness on two grounds according to MRE 609(a). According to the requirements of MRE 609(a)(1), Sheriff Warren’s conviction was punishable in excess of one year. However, according to MRE 609(a)(1), the trial judge must also determine that the probative value outweighs the prejudicial effect on the “party.” Two problems arise. First, the trial judge never weighed the probative value versus the prejudicial effect because the trial judge determined that the extortion conviction was not a prior conviction. Therefore, the trial judge failed to follow the second prong of MRE 609(l)(a) by not determining the conviction’s probative value ver *1117 sus its prejudicial effect when excluding the conviction as evidence for impeachment purposes. Secondly, MRE 609(a)(1) refers to the “prejudicial effect on a party.” Since Warren was not a party to the suit but merely a witness, the prejudicial effect on his testimony is irrelevant. In other words, when a defendant or party to a suit (such as Wilcher) testifies, and a prior conviction is sought admissible for impeachment purposes, the court must weigh the probative effect of the prior conviction and its prejudicial effect on the “party.” However, a non-party may not be prejudiced. Therefore, the extortion conviction should have been admitted.
The extortion conviction could have automatically been admitted for impeachment purposes pursuant to MRE 609(a)(2) and not subject to court discretion. Butler v. State, 608 So.2d 314 (Miss.1992). MRE 609(a)(2) does not require the court to weigh the probative value against the prejudicial effect when the prior conviction involves dishonesty or false statements. Under MRE 609(a)(2), the “admission of prior convictions involving dishonesty or false statement is not within the discretion of the court. Such convictions are peculiarly probative of credibility and are always to be admitted.” Butler, 608 So.2d at 322-24 (quoting Comments to MRE 609(a)(2)). The majority failed to determine whether extortion is a dishonest and/or fraudulent crime which should be admitted under MRE 609(a)(2).
Extortion is a dishonest crime admissible under MRE 609(a)(2). While Mississippi case law fails to address specifically that extortion is a crime of dishonesty, Iowa has done so. The Iowa Supreme Court held that “extortion is clearly an example of dishonesty.” State v. Brodene, 493 N.W.2d 793, 796-97 (Iowa 1993).
Therefore, for the previously stated reasons, the trial court erred in excluding Sheriff Warren’s conviction of extortion.
II.
THE TRIAL COURT ERRED IN EXCLUDING MITIGATING EVIDENCE IN REGARDS TO THE TESTIMONY OF WILCHER’S FAMILY MEMBERS.
Victim impact statements are irrelevant as to a criminal defendant’s guilt or culpability. Therefore, I must agree fully with Justice Stevens’s dissent in Payne v. Tennessee, 501 U.S. 808, 856, 111 S.Ct. 2597, 2625-26, 115 L.Ed.2d 720 (1991). However, since Payne over-ruled Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), which held that victim impact statements violated a defendant’s Eighth Amendment rights, I will not beat a dead horse. However, I cannot agree with the majority that allows victim impact statements but does not allow a defendant’s family to testify as to the impact upon them of the defendant’s execution. Such a finding creates an unequal playing field. Essentially, a victim impact statement is the same as a defendant’s family’s testimony about the impact of the defendant’s execution. Both are equally irrelevant. However, as the old proverb reads, what is good for the goose is good for the gander. Therefore, if victim impact statements are admissible, then a court must also find a defendant’s family’s impact testimony admissible as well. Yet, criminal law requires more than an equal playing field. Criminal defendants are entitled to heightened protection in criminal law, such as the Eighth Amendment right to allow all mitigating evidence at the sentencing stage, or as reflected in the rules of evidence; therefore, there should be no doubt that a defendant’s family may testify as to the impact of the defendant’s death just as the victim’s family has done.
When Payne over-ruled Booth and Gathers, the United States Supreme Court did not state that all victim impact statements are admissible or even should be admitted. The highest Court only stated that the Eighth Amendment does not erect a per se bar. Payne, 501 U.S. at 827, 111 S.Ct. at 2609. A victim impact statement must not unduly prejudice the defendant as to render the trial fundamentally unfair. Payne, 501 U.S. at 825, 111 S.Ct. at 2608. Payne justified admitting victim impact statements by demanding fairness and equality, “ ‘[Jjustice, though due to the accused, is due to the accuser also. The concept of fairness must *1118 not be strained till it narrowed to a filament. We are to keep the balance true.’ ” Payne, at 827, 111 S.Ct. at 2609 (quoting Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). Thus, the majority in Payne harped on the notion that victim impact statements were relevant in the sentencing phase as an act of fairness. Payne, at 827, 111 S.Ct. at 2609. See also Payne, at 833, 111 S.Ct. at 2613 (Scalia., J. concurring) (“[T]he Eighth Amendment permits parity between mitigating and aggravating factors.”). Since a victim is not on trial, the victim’s character and morality are not on trial. The impact upon a victim’s family is not on trial either. What is on trial is the guilt and culpability of the defendant. However, now that victim impact statements are admissible, any similar mitigating evidence should be deemed relevant on the basis of fairness and equal parity.
While Payne justified the use of victim impact statements in the name of fairness, Payne did not take away Eighth Amendment rights specifically due an accused. Payne reiterated that the Eighth Amendment imposes special limitations when the death penalty is imposed. Of those limitations, “ ‘States cannot limit the sentencer’s consideration of any relevant circumstance that could cause it to decline to impose the penalty. In this respect, the State cannot challenge the sentencer’s discretion, but must allow it to consider any relevant information offered by the defendant.’ ” Payne, at 824, 111 S.Ct. at 2608 (quoting McCleskey v. Kemp, 481 U.S. 279, 305-06, 107 S.Ct. 1756, 1774, 95 L.Ed.2d 262 (1987)). Furthermore, mitigating factors have been allowed in an effort to treat defendants as “uniquely individual human beings.” Payne, at 822, 111 S.Ct. at 2606-07; Booth, 482 U.S. at 504, 107 S.Ct. at 2533-34; Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). Since the law requires the State to treat a defendant as an unique human being, the impact on the defendant’s family of defendant’s death is relevant; this is even more true in light of the fact that victim impact statements are admissible at the sentencing stage.
Criminal law was created with the notion of protecting the innocent and punishing the guilty. However, since the State has great power over its constituents, our criminal system affords individuals certain rights and protections. In the words of Justice Stevens:
The Constitution grants certain rights to the criminal defendant and imposes special limitations on the State designed to protect the individual from overreaching by the disproportionately powerful State. Thus, the State must prove a defendant’s guilt beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Rules of evidence are also weighted in the defendant’s favor. For example, the prosecution generally cannot introduce evidence of the defendant’s character to prove his propensity to commit a crime, but the defendant can introduce such reputation evidence to show his law-abiding nature. See, e.g., Fed. Rule Evid. 404(a).
Payne, 501 U.S. at 860, 111 S.Ct. at 2627-28 (Stevens, J., dissenting). Reason dictates that since victim impact statements are now deemed relevant, there should be no question that a defendant’s family impact statement concerning a defendant’s death is relevant, admissible, and protected by the Eighth Amendment.
The majority relies on three Mississippi cases in determining that a defendant’s family testimony about the impact of the possibility of death of the defendant is neither admissible nor relevant. The first Mississippi case, which the later eases rely on as precedent, is Mease v. State, 539 So.2d 1324 (Miss.1989). Mease dealt solely with the issue of whether the lesser-included offense of manslaughter should have been included in the jury instruction with capital murder. Specifically, Mease addressed whether manslaughter should have been included as jury instructions for the murder of a sheriff. The case never addressed nor mentioned family testimony as a mitigating circumstance at the sentencing stage of a capital case. Therefore, Mease is inapplicable precedent authority.
In the second case, Turner v. State, 573 So.2d 657 (Miss.1990), the defendant wanted *1119 to introduce testimony of another family and the impact of the death penalty upon that family whose son was executed. The case sub judice is entirely different from Turner. In the case sub judice, Wileher wanted to introduce his own family’s testimony. The last and most recent case is Simon v. State, 688 So.2d 791, 811 (Miss.1995). In Simon, the tidal court refused to permit Simon’s family to testify in order to show the impact Simon’s death would have on their lives. Thus, Simon and the case sub judice are identical. However, Simon incorrectly relied on Turner and Mease as authority. As previously stated, Mease never addressed the issue at hand. Turner did not address whether a defendant’s own family could testify. Sim,on also ignored Payne. Therefore, the majority is incorrect in finding that this Court has dealt with this issue before.
III.
THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT COULD CONSIDER WILCHER’S CONVICTION FOR THE MURDER OF THE SECOND VICTIM AS AN AGGRAVATING CIRCUMSTANCE.
The majority incorrectly concluded that Wilcher’s second and later conviction in Wil-eher (Rankin County) 94-DP-00761 was properly considered as an aggravating factor in Wileher (Harrison County) 94-DP-00760. The majority fails to recognize the long settled premise that a criminal conviction is not final until sentencing. While “conviction” is often used in reference to the ascertainment of guilt, a conviction, as a final judgement, includes the sentence. In 24 CJS Criminal Law § 1458, “conviction”, in its technical legal sense, “means the final consummation of the prosecution against accused including the judgement or sentence rendered pursuant to a verdict, confession, or plea of guilty.” Mississippi reaffirmed this concept of “conviction” as a final judgement in Lang v. State, 238 Miss. 677, 119 So.2d 608 (1960). This Court stated that a conviction was not a final judgement until the defendant is properly sentenced. Lang, 238 Miss, at 680, 119 So.2d 608. Thus, where Lang was convicted for rape but not sentenced, this Court did not have jurisdiction to hear the appeal. Lang, at 680, 119 So.2d 608; Lemly v. State, 69 Miss. 628, 12 So. 559 (1892). Therefore, a conviction is not a final judgement until a defendant is properly sentenced. See also Ex parte White, 75 Okla.Crim. 204, 130 P.2d 103, 104 (1942) (“conviction” means a final judgement of the court based upon a plea or a verdict of guilt). Therefore, the majority was incorrect in finding no error when the trial court allowed the 94-00761 (Rankin County) conviction as an aggravating factor in the 94-00760 (Harrison County) ease.
IV.
THE PROSECUTOR’S CLOSING ARGUMENT CONSTITUTED REVERSIBLE ERROR.
No doubt, attorneys are given latitude in their closing arguments. However, the prosecution went beyond reasonable limits on closing argument. In Williams v. State, 522 So.2d 201, 209 (Miss.1988), this Court addressed prosecutorial comments made to the jury concerning “who is the state” and “send a message” as made in the case sub judice. This Court stated:
... [W]e consider the argument improper. The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to “send a message” but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.
Williams, at 209. Even though Williams did not reverse the conviction on the assignment of error concerning the improper prosecution closing argument, this Court warned prosecutors against making such arguments. If *1120 this Court continues to allow improper remarks such as “send a message,” and only note the Court’s distaste of such remarks, then prosecutors will continue making improper comments as is the case here. Therefore, this Court must reverse on grounds of improper prosecutorial comments and “send a message” to the prosecutors that this Court will not approve and affirm such egregious conduct.

CONCLUSION

In light of the foregoing errors by the trial court in the case sub judice, Wilcher was denied a fair sentencing trial and protection of his rights. I cannot agree with the majority’s conclusion that these errors were nonexistent. Therefore, I must respectfully dissent and would reverse.
McRAE, J., joins this opinion.