# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-00764-SCT

*SYBIL M. LEWIS AND WILFORD WILLIS LEWIS, JR., INDIVIDUALLY, AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF WILFORD BILL LEWIS, III*

*v.*

*PAUL KEVIN HIATT AND PAUL HIATT, SR.*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/92 |
| TRIAL JUDGE: | HON. RICHARD WAYNE MCKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | WILLIAM H. JONES |
| ATTORNEYS FOR APPELLEES: | JAMES A. COOK |
| | L. CLARK HICKS, JR. |
| | LAWRENCE CARY GUNN JR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 11/14/96 |
| MOTION FOR REHEARING FILED: | 6/25/96 |
| MANDATE ISSUED: | 11/21/96 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted and the original opinions are withdrawn and these opinions are substituted therefor.

### STATEMENT OF CASE

¶2. This wrongful death suit was brought by the surviving family of Bill Lewis against Paul Kevin Hiatt for negligence in handling a firearm and Paul Hiatt, Sr., for negligence in allowing his son to have the weapon. The Hiatts contended that the sole, proximate cause of Lewis's death was his own negligence. The jury found in favor of Paul Hiatt, Sr., and against Paul Kevin Hiatt for damages of $8,000. The plaintiffs' motion for a new trial or additur was denied. On appeal, the plaintiff/appellants raise the following issues:

**I. WHETHER THE JURY VERDICT OF $8,000 FOR THE WRONGFUL DEATH OF A 17-YEAR-OLD YOUTH WAS INADEQUATE AND AGAINST THE OVERWHELMING**

**WEIGHT OF THE EVIDENCE?**

**II. WHETHER THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ADDITUR TO CONFORM TO THE EVIDENCE, OR IN THE ALTERNATIVE, FOR A NEW TRIAL?**

**III. WHETHER THE COMMENTS MADE BY THE TRIAL JUDGE TO TWO WITNESSES CALLED BY THE PLAINTIFFS AFFECTED THE CREDIBILITY AND VALUE OF THEIR TESTIMONY?**

**IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUBMIT THE ISSUE OF PUNITIVE DAMAGES TO THE JURY?**

**V. WHETHER INSTRUCTIONS D-8A AND D-10 FAILED TO STATE APPLICABLE LAW AND WHETHER INSTRUCTION D-6 WAS CONFUSING?**

¶3. The defendant/appellees raise the following issue on cross-appeal:

**VI. WHETHER THE TRIAL COURT SHOULD HAVE DIRECTED A VERDICT IN FAVOR OF THE DEFENDANTS?**

## STATEMENT OF THE FACTS

¶4. In the early morning hours of June 23, 1990, three young men were alone at the Hiatt residence: Paul Kevin Hiatt (age 17), Jason Christian Oury (age 18), and Bill Lewis (age 17). They had been drinking beer that night. Hiatt went to his car and retrieved a .38 caliber pistol that belonged to his father. Hiatt showed the gun to his friends. All but one of the bullets were removed from the weapon, and the boys examined the gun. There is some evidence that Hiatt chased the other boys with the gun. There is also evidence that Lewis played "Russian Roulette" with the gun. The evening tragically resulted in Lewis' death, which was caused by a gunshot wound to the head from very close range. The evidence is contradictory as to whether Hiatt or Lewis fired the weapon.

## LEGAL ANALYSIS

**I. WHETHER THE JURY VERDICT OF $8,000 FOR THE WRONGFUL DEATH OF A 17-YEAR-OLD YOUTH WAS INADEQUATE AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

**II. WHETHER THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ADDITUR TO CONFORM TO THE EVIDENCE, OR IN THE ALTERNATIVE, FOR A NEW TRIAL?**

¶5. An economist testified that the net present value of Bill Lewis's life was $271,181.00; this amount was based on Lewis's potential income stream and work life expectancy, income growth, inflation, taxes, and expenditures. The Lewis family argues that this testimony was essentially uncontradicted, and that, therefore, the $8,000 jury verdict was inadequate and against the overwhelming weight of the evidence. *See Davidson v. Rogers*, 431 So. 2d 483, 485 (Miss. 1983) ("when testimony is presented which is not improbable or unreasonable the trial court should accept such evidence unless

it is contradicted").

> This Court applies the abuse of discretion standard of review when determining whether a trial court erred in refusing an additur or a new trial. It is primarily the province of the jury to determine the amount of damages to be awarded and the award will normally not "be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." The party seeking the additur must prove his injuries damages and loss of income. In deciding if the burden has been met, we must look at the evidence in the light most favorable to the party in whose favor the jury decided, granting that party any favorable inferences that may reasonably be drawn therefrom.

*Harvey v. Wall*, 649 So. 2d 184, 187 (Miss. 1995) (citations omitted).

¶6. Considerable evidence was presented in the case *sub judice* to indicate that Lewis was almost entirely responsible for bringing about his own death. In *Leach v. Leach*, 597 So. 2d 1295, 1298 (Miss. 1992), this Court reached the following conclusion upon reviewing an exceptionally low verdict in light of the facts presented at trial:

> Section 11-7-17 of Miss. Code Ann. (1972) provides that '[a]ll questions of negligence shall be for the jury to determine.' Here, the jury obviously believed that [Plaintiff] was somewhat responsible for his own injuries. As a result, they reduced his award of damages . . . . For this Court to now determine that the jury was incorrect in assessing [Plaintiff's] contributory negligence would be tantamount to holding that a jury is to be instructed that they must return a verdict for all alleged damages. This should not be the law. We have consistently enunciated the principle that a jury verdict is to be accorded substantial deference . . . the jury award . . . is affirmed.

*Leach*, 597 So. 2d at 1298-99 (citations omitted).

¶7. Based on the foregoing, this Court holds that the trial court did not abuse its discretion in denying the Lewis family's motions for additur and/or new trial. Considering the evidence adduced at trial, the verdict rendered by the jury was neither unreasonable nor outrageous.

## III. WHETHER THE COMMENTS MADE BY THE TRIAL JUDGE TO TWO WITNESSES CALLED BY THE PLAINTIFFS AFFECTED THE CREDIBILITY AND VALUE OF THEIR TESTIMONY?

¶8. During the defendants' cross-examination of economist, Dr. Gerald Lee, the following exchange occurred:

> Q. Now did you also use an income tax rate of 12.9 per cent?

> A. Yes.

> Q. And according to the chart of numbers that you've got over here, you estimated that this young man, one of these days when he quit working, would be making $178,000.00 a year annual salary?

A. Yes.

Q. And still paying 12 per cent income tax?

A. I think that is - that is exactly what I have done. If I may take a moment. I have done that, I am answering your question. I have done that. I have assumed 12 per cent. If I may continue on with that. The income tax system that we have in this country since 1986 has been indexed. That means that every year as inflation goes up the tax rate change. If any of you have paid for the last few years you have noticed this. What we do, we find that the standard deduction goes up, the rates are changed because we have found that over the past 20 or 30 years inflation has pushed people into higher brackets; they weren't really making any more income they were just making more money, but it wasn't buying anymore. So we have indexed the tax rates. Now that's what I have assumed would take place, that as his income went up much of it would be a result of inflation, as it has been in the past. For instance back in 1938 when the first ---

BY [DEFENSE COUNSEL]: Your honor, I would like - I hate to interrupt the man but he's getting a little far afield in my question ---

BY THE COURT: Doctor Lee, if you will just answer yes or no and then if you wish to explain you may certainly do so. But don't just take off on a discourse or narrative. O.K.?

A. I will try.

BY THE COURT: It's not a matter of trying, you won't do it.

¶9. The Lewis family argues that the trial court's comments to the expert witness communicated a certain disapproval of the witness, which undermined the credibility of his testimony. "A trial judge should not in any way 'inadvertently communicate to the jury his opinion regarding the value or credibility of the testimony being offered.'" ***Wirtz v. Switzer***, 586 So. 2d 775, 782-83 (Miss. 1991) (quoting ***Shelton v. Puckett***, 483 So. 2d 354, 357 (Miss. 1986)). It appears in this case, however, that the trial court was merely directing Dr. Lee to testify in a manner that would be responsive and relevant to the questions asked of him. Furthermore, the trial judge's error, if any, was harmless. ***See Wirtz***, 586 So. 2d at 783. (where trial judge's repeated questioning of witness could have possibly created doubt in the jury's mind as to the existence of a loss, this Court found the error to be harmless).

¶10. The Lewis's also complain of the following statements made by the trial judge as Stevie Smith was called to the witness stand:

BY THE COURT: "Have you been sitting in this courtroom?

BY [PLAINTIFFS' COUNSEL]: No, sir, he just got here.

BY THE COURT: Wasn't he sitting right back there? Have you been in this courtroom?

BY [PLAINTIFFS' COUNSEL]: Judge, he's not been in here. I just brought him in and sit [sic] him down.

BY THE COURT: You've not been in here at all?

BY [PLAINTIFFS' COUNSEL]: No, sir, he's not heard any testimony.

BY [DEFENSE COUNSEL]: Your Honor, I don't object. If he just came in during this recess I don't have any ---

BY THE COURT: I would have sworn I saw him sitting right back there while ago but maybe not."

BY [PLAINTIFFS' COUNSEL]: Judge, may we approach the bench?

¶11. The trial court properly questioned the witness about his presence in the courtroom, because the witness' presence would have been a violation of the Rule. Apparently, the trial judge repeatedly questioned the witness only because the plaintiffs' attorney continued to interrupt. Regardless, the situation was resolved at a bench conference following the exchange. The trial judge will not be held in error for fulfilling his duty to maintain order over the proceedings.

## IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUBMIT THE ISSUE OF PUNITIVE DAMAGES TO THE JURY?

¶12. Punitive damages are allowable in appropriate cases for wrongful death. *McGowan v. Estate of Wright*, 524 So. 2d 308, 309(Miss. 1988); *Thornton v. Insurance Co. of N. Am.*, 287 So. 2d 262, 265 (Miss. 1973). "[P]unitive damages are allowable only upon proof of gross negligence or willful misconduct." *Bryant v. Alpha Entertainment Corp.*, 508 So. 2d 1094, 1098 (Miss. 1987); *Jesco, Inc. v. Shannon*, 451 So. 2d 694, 704 (Miss. 1984). The court must decide whether the party requesting punitive damages has introduced evidence sufficient to warrant a punitive damage instruction. *U.S. Industries, Inc. v. McClure Furniture Co.*, 371 So. 2d 391, 393 (Miss. 1979).

The trial court - and this Court on appeal - must look at the elements of the punitive damages . . . and decide whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could have found either malice or gross neglect/reckless disregard.

*Colonial Mortg. Co., Inc. v. Lee*, 525 So. 2d 804, 808 (Miss. 1988) [citations omitted].

¶13. In *Webb v. Jackson*, 583 So. 2d 946, 950 (Miss. 1991), this Court noted, "A high degree of care is necessary in the use or manipulation of loaded weapons in the presence or vicinity of other persons, and where injury results from a failure to exercise such care the defendant is liable," and that "[t]he bearer of loaded firearms is bound to exercise the utmost diligence in their handling and he is liable for any injury caused by their discharge, unless it appear that he was entirely without fault." *Webb*, 583 So. 2d at 950 (quoting *State v. Cunningham*, 107 Miss. 140, 152, 65 So. 115, 118 (1914)).

¶14. The plaintiffs introduced some evidence showing that Hiatt may have actually shot Lewis while waving the gun around. This would have constituted reckless behavior warranting a punitive damage instruction. However, the jury verdict does not reflect that they reached this conclusion. If the jury had determined that Hiatt shot Lewis, then the denial of the punitive damage instruction would have been error requiring a new trial on the issue of damages. By its verdict, however, the jury found that

Hiatt was not the individual handling the gun when Lewis was shot, even though Hiatt may have been running around the house with the weapon before the accident occurred. Therefore, given the verdict of the jury, any error in denying a punitive damage instruction was harmless.

## V. WHETHER INSTRUCTIONS D-8A AND D-10 FAILED TO STATE APPLICABLE LAW AND WHETHER INSTRUCTION D-6 WAS CONFUSING?

¶15. Appellees contend that Jury Instruction D-6 was confusing and erroneous because it precluded the jury from considering circumstantial evidence. Instruction D-6 provided:

> You should not be guided in your deliberations by speculation, guesswork, or surmise. Furthermore, you should not consider any evidence of possibilities, because evidence of possibilities is no evidence at all. Before evidence can be considered by you, it must be cast in terms of probability. If you are unable to decide the defendant's liability without resorting to speculation, guesswork, surmise, or evidence of possibilities, then it is your sworn duty to return a verdict in favor of the defendants.

¶16. The Lewis family contends that the granting of instruction D-6 was reversible error, and cites *Griffin v. Fletcher*, 362 So. 2d 594, 596 (Miss. 1978). *Griffin* is factually distinct from the case at hand, however, because a peremptory instruction on liability was granted in *Griffin*. *Griffin*, 362 So. 2d at 595. Thus, the instruction in that case was directed toward the calculation of damages only. The instruction at issue in the case *sub judice* deals with determining liability. Furthermore, the instructions themselves are different.[1]

¶17. Even assuming that the reasoning expressed in *Griffin* applies to this case, the instructions when read as a whole presented a clear statement of the law of the case. The instructions in the case *sub judice* made it clear that the jury was to consider "the testimony of the witnesses and the exhibits offered and received." They were also instructed to consider and weigh "the testimony of each witness who has testified in this case," and to consider the jury instructions "as a whole." Furthermore, a review of all the instructions reveals that the jury was properly instructed on the preponderance of the evidence standard.

¶18. Considering all the instructions that were given, the defect in instruction D-6, if any, was cured. The jury was repeatedly instructed to consider all the evidence. Thus, the jury instructions in this case, when reviewed as a whole, fairly announced the applicable law regarding the evidence to be considered. *See James W. Sessums Timber Co., Inc. v. McDaniel*, 635 So. 2d 875, 879 (Miss. 1994); *Rester v. Lott*, 566 So. 2d 1266, 1269 (Miss. 1990).

¶19. The appellants next complain that instruction D-8A allowed the jury to consider the negligence of Bill Lewis without stating which of Lewis' actions were negligent. Instructions D-8A read as follows:

> If you believe the sole cause of the accident which occurred was the negligence of Wilford W. Lewis, III, that is, if you believe that he, not Paul Hiatt, Jr., failed to exercise the degree of care that a reasonable person would have used under the circumstances in handling a weapon such as the one in question, and if you believe Bill Lewis' negligence, if any, was the sole cause of the tragedy in this case, then it will be your sworn duty to find that his death was a result of his own

negligence and to return a verdict in favor of the defendants.

¶20. Contrary to the Appellants' argument, the instruction clearly defined negligence as failure to use that degree of care a reasonable person would have used under the circumstances in handling the weapon which caused his death. This argument is without merit.

¶21. Finally, the Lewis family argues that the trial judge erred in granting instruction D-10.[2] The record reveals that no contemporaneous objection was made to the giving of this instruction. Therefore, the Lewis family is procedurally barred from raising this issue on appeal. *Ross Cattle Co. v. Lewis*, 415 So. 2d 1029, 1030 (Miss. 1982).

## CROSS-APPEAL

## VI. WHETHER THE TRIAL COURT SHOULD HAVE DIRECTED A VERDICT IN FAVOR OF THE DEFENDANTS?

¶22. On cross-appeal, the Hiatts contend that the trial judge should have granted a directed verdict in their favor. In considering whether to grant a directed verdict, the trial judge should look to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury. *See Hall v. Mississippi Chem. Exp.*, 528 So. 2d 796, 798 (Miss. 1988). The evidence was contradictory as to whether Hiatt or Lewis actually fired the fatal shot. That is, there was evidence at trial sufficient to preclude the granting of a directed verdict. Thus, the cross-appeal is without merit.

## CONCLUSION

¶23. The contentions raised by the plaintiff/appellants are without merit. The claim raised by the defendant/appellees on cross-appeal is also without merit. Therefore, the judgment of the trial court is affirmed.

¶24. **DIRECT APPEAL: JUDGMENT IS AFFIRMED. CROSS-APPEAL: JUDGMENT IS AFFIRMED.**

**LEE, C.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND PITTMAN, J.**

## BANKS, JUSTICE, DISSENTING:

¶25. I cannot agree with the majority treatment of the issue presented by instruction D-6. I, therefore, dissent.

¶26. The majority attempts to distinguish *Griffin v. Fletcher*, 362 So. 2d 594 (Miss. 1978) with the

suggestion that because, there, a peremptory instruction liability was given and thus "the [erroneous] instruction in that case was directed toward the calculation of damages only." Majority opinion, p. 8. The majority misreads *Griffin*. The fact is that, while a peremptory instruction was given, one of the errors found by this Court was that other contradictory instructions were given presenting the issue of liability as well as damages to the jury. *Id.* at 596. The vice of the instruction given there, which is similar to that given here, was that it tended to negate circumstantial evidence. There was no mention of the instruction in relation to calculation of damages. The case was remanded for retrial on the issue of liability and damages. *Id*. Clearly, the principle announced in *Griffin* with respect to instructions deeming "evidence of a possibility no evidence at all" was not limited to situations in which only the question of damages remained.

¶27. The majority's alternate theory for rejecting this assertion of error is equally invalid. The majority suggests that general instructions to the jury that it was to consider the testimony and exhibits cured any error in instruction D-6. The fact is, however, another part of the standard court instructions tells the jury to disregard any evidence excluded by the court. The jury is also instructed that it must be guided by the evidence and D-6 tells us that certain "evidence" is not really "evidence" at all. Moreover, it is only logical that an instruction with regard to specific evidence will always prevail over a contradictory general instruction. *See Flores v. State*, 899 P.2d 1162, 1176 (Okla. Crim. App., 1995).

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

### McRAE, JUSTICE, DISSENTING:

¶**28.** The majority's emphasis on allegations that the boys were playing "Russian Roulette" when Lewis was shot attempts to camouflage the fact that a jury found that young Hiatt was negligent in his handling of the gun. Moreover, Instruction D-6 served to confuse the jury and should not have been granted. Accordingly, I dissent.

¶29. Submission of Instruction D-6 was erroneous, and should require reversal of the case and a new trial. The instruction provided as follows:

> You should not be guided in your deliberations by speculation, guesswork, or surmise. Furthermore, you should not consider any evidence of possibilities, because evidence of possibilities is no evidence at all. Before evidence can be considered by you, it must be cast in terms of probability. If you are unable to decide the defendant's liability without resorting to speculation, guesswork, surmise, or evidence of possibilities, then it is your sworn duty to return a verdict in favor of the defendants.

¶30. In *Griffin v. Fletcher*, 362 So. 2d 594, 596 (Miss. 1978), we determined that an instruction[(3)] similar to Instruction D-6 should not have been granted because it related "to parts of the evidence and not to the entire evidence which support[ed] the verdict, and it [was] a comment upon the weight of the evidence . . . [which could] conceivably exclude circumstantial evidence." This Court directed the trial court not to grant this instruction on retrial. *Id.* In *Jones v. Wiese*, 652 So. 2d 175, 178 (Miss. 1995), we found error in the following portion of a similar instruction: "[Y]ou may not allow or award any damages to the Plaintiff for any alleged injuries that only possibly resulted from the

happening of the accident."

¶31. As in *Griffin* and *Jones*, the instruction in the case *sub judice* was confusing in that it was a comment upon the weight of the evidence. There was testimony to indicate the possibility that Lewis may have actually been shot by Hiatt. The jury could have given the testimony revealing this possibility greater weight than other evidence, or could have considered it with additional evidence supporting this theory, such that the jury believed by a preponderance of the evidence that Hiatt was entirely responsible for Lewis's death.

¶32. Instead, Instruction D-6 commanded the jury to ignore any and all evidence that might have suggested this possibility. The instruction essentially required the jury to ignore any circumstantial evidence which, combined with other circumstantial evidence, might have demonstrated by a preponderance of the evidence that Hiatt was responsible for Lewis's death. Instruction D-6 clearly confused the jury on the proper standard for determining the comparative negligence of the parties involved.

¶33. I would find, therefore, that the grant of Instruction D-6 was reversible error requiring a new trial. Further, on re-trial, the jury should be allowed to consider the issue of punitive damages. Accordingly, I dissent.

**SULLIVAN, P.J., AND PITTMAN, J., JOIN THIS OPINION.**

1. The instruction in *Griffin* read as follows: "The court instructs the jury that any evidence which tends only to show a possibility is no evidence at all and must be disregarded by you in reaching your verdict." *Griffin*, 362 So. 2d at 596.

2. Instruction D-10 read as follows:

> In this case you have heard the testimony of expert witnesses. The testimony of an expert witness should be judged by you like any other testimony, that is, you should determine if the testimony is sound, credible, and based upon reasonable assumptions and theories. After carefully evaluating the testimony of an expert witness, you may properly decide to either accept this testimony in full, to accept only part of it, or to reject it completely.

3. The *Griffin* Court found that the following instruction was erroneously granted:

> The court instructs the jury that any evidence which tends only to show a possibility is no evidence at all and must be disregarded by you in reaching your verdict.

362 So. 2d at 596.