# IN THE COURT OF APPEALS 3/11/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-CA-00309 COA


**DONNA RUSSELL AND RICHARD RUSSELL**

**APPELLANT**

 **v.**

 **THOMAS, WALKER, LACEY, INC. AND PAUL D. HERMAN**

**APPELLEES**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. ROBERT LOUIS GOZA JR.

COURT FROM WHICH APPEALED: MADISON COUNTY CIRCUIT COURT

FOR APPELLANT:

WILLIAM P. FEATHERSTON, JR.

FOR APPELLEES:

LAURIE R. WILLIAMS

ALAN C. GOODMAN

NATURE OF THE CASE: NEGLIGENCE

TRIAL COURT DISPOSITION: JURY VERDICT IN FAVOR OF THE PLAINTIFF IN THE AMOUNT OF $56,192.00


BEFORE THOMAS, P.J., COLEMAN, AND McMILLIN, JJ.

THOMAS, P.J., FOR THE COURT:

Donna and Richard Russell appeal from a jury verdict in favor of Donna Russell in the amount of $56,192.00 and Richard Russell in the amount of $0.00, assigning two issues as error:

I. WAS THE VERDICT OF THE JURY CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE; and

II. DID THE TRIAL COURT ERR IN DENYING THEIR MOTION FOR ADDITUR OR, IN THE ALTERNATIVE, NEW TRIAL?

Although the Russells raise the issues separately, there is really only one issue for this Court to consider: did the trial court err in denying additur or a new trial? Finding no error, we affirm.

FACTS

The Russells filed suit against Paul Herman and his employer, Thomas, Walker, Lacey, Inc., for personal injuries to Donna and loss of consortium for Richard they alleged arose out of an automobile accident which occurred in Jackson, Mississippi, in July of 1992. The defendants admitted negligence, and the case proceeded to trial solely on the issue of damages. The jury returned a verdict and awarded damages in the amount of $56,192.00 in favor of Donna. The jury also returned a verdict in favor of Richard for loss of consortium and assessed his damages as zero ($0.00).

A. THE MEDICAL TESTIMONY

Donna testified that she injured her arm, neck and lower back in the collision. However, she did not go to the emergency room after the accident, she did not even see her family physician, Dr. Marty Weber, until two days after the accident. She went back to see Dr. Weber approximately two weeks after the accident, and Weber's records reflect that Donna indicated that her back was no longer bothering her. Dr. Weber discharged her without restrictions. Some time later, Donna saw Dr. Ancel Tipton, a neurologist. Donna then saw Dr. Joe Terry complaining of pain in her hand and numbness in her leg. Dr. Terry recommended she have an MRI and referred her to Dr. Greg Wood, an orthopaedist. Dr. Wood recommended conservative treatment consisting of physical therapy. Donna also saw Dr. Rhodes, an orthopaedist, who recommended she undergo physical therapy and do back exercises, but Donna admitted that she did not follow Rhodes' recommendation.

In March of 1994, she made an appointment with Dr. John Frenz, a neurosurgeon. Frenz conducted a myelogram and recommended Donna undergo surgery on her back to correct "nerve root compression." Frenz testified at trial that Donna sustained a ruptured disc and nerve root compression in the accident. He testified that she needed to undergo a discectomy and possibly fusion surgery in order to treat her injuries. He also found that her cervical injury was permanent and, as a result of her back injury, she is permanently disabled. Frenz testified that he found no evidence of degenerative disc syndrome.

Donna sought a second opinion from Dr. Bruce Senter on whether she should undergo surgery. Senter testified at trial by videotape deposition that his diagnosis differed from Frenz's diagnosis, and

he informed her that the surgical procedure Frenz was advocating would not help her and could easily harm her. Dr. Senter found that, although he did not recommend any surgery at the time he initially saw her, the only type surgery which might relieve some of Donna's pain was a fusion, a major surgical procedure which does not entirely relieve pain and necessitates a long recuperative period. Dr. Senter recommended that she go through an additional evaluation and psychological testing prior to undergoing any surgery.

Dr. Senter, and the two doctors who testified for the defendants, diagnosed Donna with mild degenerative changes to the L-4 vertebrae, and none of the three recommended Donna undergo surgery. All three doctors asserted that the degenerative disc syndrome had existed prior to the accident. None of the three doctors found that Donna had any nerve root impingement.

Dr. Senter also testified that he had seen Donna after she was seen by Dr. Frenz, and Senter's partner, Dr. Wood had seen Donna before she was seen by Frenz. Dr. Wood conducted a nerve conduction study and other tests, all of which were normal. Dr. Woods' medical records indicate that he diagnosed Donna with "soft tissue problems" that were not self-limiting or restricting.

In fact, on redirect examination, Dr. Senter, Donna's own witness, admitted that although it was possible that the accident caused Donna's symptoms, he "wonder[ed] a little bit about the veracity of the complaints" because Donna had seen so many doctors over such an extended period after the accident.

Dr. Philip Lucas, a radiologist, testified for the defendants that Donna suffered from degenerative disc disease, which is very prevalent in the population. Dr. Lucas also testified that he found only a slight herniation and did not find any evidence of nerve root compression.

Dr. Thomas Turner, an orthopaedic surgeon, diagnosed Donna with cervical and low back strain superimposed on degenerative disc disease. He stated that her injuries should continue to respond to conservative treatment, and he saw no reason that she could not return to a full-time pharmaceutical sales job. Dr. Turner also testified that the accident did not cause the herniated disc or an aggravation of the degenerative disc disease because Donna's symptoms cleared up almost completely within a few weeks of the accident. Dr. Turner also testified that she did not suffer from nerve root compression and did not need surgery.

Donna presented medical bills totaling $7,192.00.

## B. LOST WAGES

Donna testified on direct examination that, up until the time of the accident, she had been continuously employed on a full-time basis for the entire nineteen years of her marriage. However, on cross-examination when questioned about her resume, she admitted that she had only worked "flex time," or part-time for the majority of her work history.

She also testified that she was unable to hold a pharmaceutical sales job and has suffered substantial future wage loss as a result of the accident. However, at the time of the accident, she was not working in the pharmaceutical business but was working at Gayfer's and was "getting ready to take another pharmaceutical sales job." She worked at Gayfer's from February 1992 until October 1992.

After the accident, she then went to work full-time for Horizon Pharmaceuticals in a position that had a larger sales territory than her previous pharmaceutical job which she held prior to the accident, and she continued to work for Horizon for two years following the accident.

Donna resigned from the job with Horizon in March of 1994. Although Donna attributed her resignation to her injuries from the accident, she admitted on cross-examination that she had been criticized by her supervisor for, among other things, mispromoting certain drugs and for problems with her expense report. Donna accepted a new position and began training for a job with another pharmaceutical sales company on a contractual basis while still employed with Horizon. When her contract ended in June of 1994, she chose not to renew her contract, alleging that she needed to take some time off that summer in order to prepare for back surgery Dr. Frenz had scheduled for August. However, she admitted on cross-examination that she went to Disney World and Destin, Florida, that summer and did not have the surgery.

Further, although Donna claims that she is unable to hold a pharmaceutical sales job, she admitted that she was employed with P.D.M. on a contractual basis from September of 1994 until trial.

Donna claimed that she earned approximately $40,000.00 during 1993, and, as a result of the accident, she only earned $8,812.00 in 1994. However, she did not testify as to her pre-accident salary, and there was substantial evidence that she took a flex time job by choice rather than out of necessity.

## C. LOSS OF CONSORTIUM

Richard Russell asked the jury to return a verdict in the amount of $100,000.00 for loss of consortium. Richard testified merely that, as a result of the accident, he has had to (1) see his wife in pain, and (2) readjust his schedule. He also testified that his sex life has been diminished, and his wife has become a little bit more irritable since the accident. Richard was unable to provide any other factual basis for his consortium claim.

## ANALYSIS

The Russells argue that their testimony regarding their damages is uncontradicted and that the jury verdict of $56, 192.00 for Donna and $0.00 for Richard was inadequate and contrary to the overwhelming weight of the evidence. The trial court denied their motion for additur or new trial.

The standard of review of a trial court's denial of an additur or a new trial is an abuse of discretion standard. *Lewis v. Hiatt*, 683 So. 2d 937, 940 (Miss. 1996). A determination of the amount of damages to be awarded is within the province of the jury, and such an award should not be set aside unless it is so unreasonable as to be "beyond all measure, unreasonable in amount and outrageous." *Id.* Further, this Court must review the evidence "in the light most favorable to the party in whose favor the jury decided, granting that party any favorable inferences that may reasonably be drawn therefrom." *Id.*

There was conflicting medical testimony regarding the nature, cause, and extent of Donna's injuries. There was also conflicting testimony regarding the cause of her past lost wages and her future ability to earn a living. Other than stating that his wife was a little more irritable and that he had been forced

to alter his schedule, there was no testimony supporting an award for loss of consortium. Especially when faced with contradictory testimony, the jury determines the weight and worth of testimony and the credibility of witnesses at trial. *Wallace v. Thornton,* 672 So. 2d 724, 727 (Miss. 1996).

The trial court did not err in denying the motion for additur or, alternatively, for new trial. There is no merit to this issue.

**THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IN THE AMOUNT OF $56,192.00 IN FAVOR OF APPELLANT DONNA RUSSELL AND**

**JUDGMENT IN THE AMOUNT OF $0.00 IN FAVOR OF APPELLANT RICHARD RUSSELL ARE AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANTS.**

**McMILLIN, P.J., COLEMAN, DIAZ, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

**BRIDGES, C.J., HERRING AND KING, JJ., NOT PARTICIPATING.**