# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 2000-CA-01394-COA

**SCOTT MILBURN, TOP BAIL BOND, ALBERT A. MILBURN, ABC AND HAMPTON GARDNER D/B/A THE HAMPTON COMPANY**       **APPELLANTS**

**v.**

**VERGIE VINSON**       **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 12/22/1999 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | SANFORD E. KNOTT |
| ATTORNEYS FOR APPELLEE: | EUGENE COURSEY TULLOS |
| | MARK K. TULLOS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | JUDGMENT IN FAVOR OF PLAINTIFF FOR EMOTIONAL DISTRESS AS A RESULT OF UNLAWFUL TRESPASS. COMPENSATORY DAMAGES IN THE AMOUNT OF $200,000 AND PUNITIVE DAMAGES IN THE AMOUNT OF $100,000. |
| DISPOSITION: | AFFIRMED - 10/29/2002 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

EN BANC.

CHANDLER, J., FOR THE COURT:

¶1. Vergie Vinson brought suit against Scott and Albert Milburn, Top Bail Bond, and the Hampton Company for unlawful trespass and emotional distress. The case was tried on December 22, 1999, in Smith County, Mississippi. Judgment was found in Mrs. Vinson's favor in the amount of $200,000 in compensatory damages and $100,000 in punitive damages. The appellants, feeling aggrieved by the judgment against them, have appealed this award and allege three assertions of error. Firstly, the appellants allege that the trial court erred in not granting the appellants' motion for judgment notwithstanding the verdict as to whether a trespass was committed. Next, they argue that the trial court erred in not setting aside the jury verdict as against the overwhelming weight of the evidence. Finally, the appellants argue that the trial court erred in refusing to grant their motion for remittitur.

¶2. Finding no error, we affirm.

## FACTS

¶3. On Christmas Day 1996, Scott and Albert Milburn, bail bondsmen employed by the Hampton Company, went to the home of the appellee, Vergie Vinson. The Milburns were hoping to find Alfred Robinson at Mrs. Vinson's home. Robinson, Mrs. Vinson's son, failed to appear in court on a bond held by the Milburns' employer.

¶4. The Milburns arrived at Mrs. Vinson's home at approximately 1:00 p.m. Christmas Day and knocked on the door. Mrs. Vinson, who was eighty-three years old at the time, opened the door to find the Milburns outside. At this point the events of the afternoon are highly disputed. Mrs. Vinson testified that she opened her door and greeted the Milburns. One of the men responded that they were there to search her home. Mrs. Vinson asked if they had a search warrant. In answer, one of the men quickly held out a piece of paper. Because of recent eye surgery, Mrs. Vinson was unable to read the document and therefore, believing it to be a search warrant, she let them in her home. At that point, Mrs. Vinson testified that Mr. Albert Milburn remained in the living room with her and Mr. Scott Milburn searched every room in her home, including the closets and her bedroom. She further testified that although the men never removed their guns from under their jackets, she could tell that they were both armed. As soon as the Milburns left, Mrs. Vinson contacted the Smith County Sheriff's Department to report the incident.

## LAW AND ANALYSIS

### I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE APPELLANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT?

¶5. The appellants argue that the trial court erred in refusing to grant their motion for judgment notwithstanding the verdict as to whether a trespass was committed. They argue that, as bail agents, the Milburns had the authority to search Mrs. Vinson's home and properly exercised that authority.

¶6. Directed verdict and JNOV motions challenge the legal sufficiency of the evidence. *Woodard v. Turnipseed,* 784 So. 2d 239 (¶13) (Miss. Ct. App. 2000). When such motions are made, the court must consider all of the evidence, not just evidence that supports the non-movant's case, in the light most favorable to the party opposed to the motion, giving the non-movant all favorable inferences that may be reasonably drawn from the evidence. *Id.* If, after examining the facts and inferences, the facts and inferences point so overwhelmingly in favor of the movant that no reasonable person could have arrived at a contrary verdict, the motion must be granted. *Id.*; *Stubblefield v. Jesco, Inc.*, 464 So. 2d 47, 54 (Miss. 1984). On the other hand, if there is substantial evidence opposed to the motion, evidence of such quality and weight that reasonable and fair-minded people might reach a different conclusion, the motion should be denied and the jury's verdict allowed to stand. *City of Jackson v. Locklar*, 431 So. 2d 475, 478 (Miss. 1983); *Hannah v. Czaja*, 769 So. 2d 847 (¶9) (Miss. Ct. App. 2000). Only when a directed verdict at the close of the plaintiff's or the defendant's case would have been proper, will a judgment notwithstanding the verdict be proper. *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1098 (Miss. 1992); *Hannah*, 769 So. 2d at (¶9).

¶7. The appellants rely upon Mississippi Code Annotated § 99-5-27(2)(b) (Rev. 2000) to support their argument that they had the right to enter Mrs. Vinson's home to search for Robinson. That statute reads as follows: "[b]ail or its agent, at any time, may arrest its principal anywhere or authorize another to do so for

purpose of surrender . . . ." Miss. Code Ann. § 99-5-27 (2)(b) (Rev. 2000).

¶8. Appellants further rely upon *Taylor v. Taintor*, 16 Wall. 366, 371, 21 L.Ed. 287 (1887). In *Taylor*, the United States Supreme Court held that a bail agent had the authority to seek and arrest a person fleeing the court's jurisdiction. *Id*. The court noted that the bail agent could arrest the principal at any time and in any state. *Id.* The court further stated that the bail agent was within his authority to enter the principal's home to arrest him and return him to the court's jurisdiction. *Id.* This line of authority was adopted by the Mississippi Supreme Court in *Cartee v. State*, 162 Miss. 263, 265,139 So. 618, 620 (1932) and codified as Miss. Code Ann. § 99-5-27 (Rev. 2000).

¶9. While the above cited authority would give the Milburns the right to search Robinson's home, it does not grant the authority to search a third party's home. The appellants testified that Robinson received some mail at his mother's home and that her address was on the title to his vehicle; however, testimony from Mrs. Vinson and her other children, including her son and next-door neighbor Hillman Vinson, indicated that Robinson seldom visited his mother's residence and actually lived out of the state.

¶10. A trespasser is defined as one who enters upon another's premises "without license, invitation, or other right, and intrudes for some definite purpose of his own, or at his convenience . . . ." *Saucier v. Biloxi Reg'l Med. Ctr.,* 708 So. 2d 1351 (¶28) (Miss. 1998) (quoting *Kelley v. Sportsmen's Speedway, Inc.,* 224 Miss. 632, 644, 80 So. 2d 785, 790 (1955)). Mrs. Vinson testified that only after the Milburns showed her what they represented to be a search warrant, did she allow them in her home. Because they did not have a search warrant or other authority to search Mrs. Vinson's home, there was sufficient evidence for the jury to find that a trespass had been committed.

## II. DID THE TRIAL COURT ERR IN FAILING TO FIND THAT THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

¶11. The appellants argue that the trial court erred in failing to set aside the jury's verdict and awards of compensatory and punitive damages as against the overwhelming weight of the evidence. They argue that Mrs. Vinson failed to present evidence to support the award of compensatory damages. The appellants further assert that the punitive damages award should have been set aside as the appellants' actions did not exhibit willful, wanton, or reckless disregard for Mrs. Vinson's safety.

¶12. The court accords great deference to jury verdicts. *Sperry-New Holland v. Prestage,* 617 So. 2d 248, 263 (Miss. 1993). "A verdict should be set aside where it is manifest, from the evidence and surroundings, that it is not a fair and true verdict." *Gibson v. A.P. Lindsey, Distributor, Inc.,* 233 Miss. 853, 864, 103 So. 2d 345, 349 (1958). The court in *Herrington v. Spell,* 692 So. 2d 93, 103 (Miss. 1997) stated:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.

¶13. Stated differently, the trial judge may only usurp the jury's function in setting a damage award, when he finds, pursuant to the statute, either: (1) that the jury's verdict is so shocking to the conscience that it

evidences bias, passion, and prejudice on the part of the jury; or (2) that the verdict was contrary to the overwhelming weight of the credible evidence. *State Highway Comm'n of Mississippi v. W.W. Warren,* 530 So. 2d 704, 707 (Miss. 1988). Therefore, this Court, on appellate review, will only set aside a jury award if it is found to be "so unreasonable in amount as to strike mankind at first blush as beyond all measure, unreasonable in amount and outrageous." *Woods v. Burns*, 797 So. 2d 331 (¶15) (Miss. Ct. App. 2001) (quoting *Lewis v. Hiatt,* 683 So.2d 937, 941 (Miss.1996)).

¶14. In the case *sub judice*, Mrs. Vinson testified at trial that since the incident at her home, she has had trouble sleeping and eating properly. Mrs. Vinson also testified that she was constantly afraid, even in her own home. She stated that, for the first time in her life, she felt it necessary to keep her doors and windows locked at all times. Mrs. Vinson further stated that she was unable to participate in several activities that she was very involved in before the Milburns forced their way into her home. She stated that she used to walk quite some distance from her home but now would only walk in her yard or the short distance to her son's home next door. She also stated that she now carries a telephone with her at all times and will only go outside if her son and daughter-in-law are at home.

¶15. Hillman Vinson and his wife, Sandra, also testified to Mrs. Vinson's constant nervousness and inability to sleep. Dr. Phil Thompson, Mrs. Vinson's primary physician, testified about his treatment of Mrs. Vinson. Dr. Thompson testified that Mrs. Vinson's mental and emotional health had suffered significantly since the incident at her home. He testified that he treated Mrs. Vinson more often because of her emotional troubles and that he had to often adjust her medications to help her sleep and cope in public places.

¶16. As stated by the Mississippi Supreme Court, a jury's verdict is not merely advisory. *Rodgers v. Pascagoula Pub. Sch. Dist.,* 611 So. 2d 942, 945 (Miss.1992). The jury sits in the best position to determine the amount of damages warranted in a particular case, if any at all. *Lewis*, 683 So. 2d at 941. In addition, "[t]here are some damages, such as medical expenses and loss of income, which must be proved with reasonable certainty, but there are also some damages, such as pain and suffering, that are not susceptible of proof as to monetary value, and these items must be left to the discretion of the jury as long as the amount thereof, under all of the evidence, is just and reasonable." *General Motors Corp. v. Pegues*, 738 So. 2d 746 (¶26) (Miss. 1998) (quoting *Grant, Summary of Mississippi Law* § 980.1 (Supp.1984)) . Therefore, viewing the evidence presented in the light most favorable to the non-moving party, we find that the jury award was not against the overwhelming weight of the evidence and that the trial court did not err in refusing to grant a new trial.

¶17. The appellants further argue that the trial court erred in allowing the award of punitive damages to stand. They argue that the Milburns' actions did not amount to willful, wanton or reckless disregard for Mrs. Vinson's safety. They further argue that they did not commit actual fraud against Mrs. Vinson. As such, the defendants maintain that the punitive damages award was improper.

¶18. Mississippi Code Annotated § 11-1-65 (1)(a) (Supp. 2001) provides as follows:

> (1) In any action in which punitive damages are sought:
> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Because the evidence presented at trial rises to the standard necessary for a punitive damages award, this assignment of error is without merit.

¶19. The Milburns went to Mrs. Vinson's home on Christmas Day. At the time Mrs. Vinson was an eighty-three year old lady who was alone. The Milburns flashed a document at Mrs. Vinson that they represented to be a search warrant. They then entered her home and searched it thoroughly. Testimony from Mrs. Vinson and her son and daughter-in-law reveal that the house was in a state of disarray when the Milburns left. Mrs. Vinson also testified that the Milburns threatened her son and threatened to come back to her home to find him if necessary. Also relevant was the fact that both men wore their firearms into Mrs. Vinson's home. Mrs. Vinson testified that she saw the guns and was terrified.

¶20. Based on the testimony given, the jury reasonably determined that the Milburns acted with malice or in reckless disregard for Mrs. Vinson's safety when they entered her home. As such, the award was proper.

### III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE DEFENDANTS' MOTION FOR REMITTITUR?

¶21. The appellants argue that the trial court erred in refusing to grant their motion for remittitur. They maintain that the verdict was the result of bias, prejudice, or passion on the part of the jury.

¶22. A trial court's authority to grant a remittitur is grounded in statute and reads as follows:

> The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

Miss. Code Ann. § 11-1-55 (Rev.1991).

¶23. Where a trial court refuses to grant a remittitur, this Court reviews the decision for abuse of discretion. *Odom v. Roberts,* 606 So. 2d 114, 121 (Miss. 1992). The jury's award is not to be set aside unless it is entirely disproportionate to the injury sustained. *Illinois Cent. R.R. v. Gandy,* 750 So. 2d 527, 534 (¶¶25-26) (Miss. 1999). The court looks to see whether the verdict is so excessive it shocks the conscience evidencing a bias, passion and prejudice on the part of the jury. *Dorris v. Carr,* 330 So. 2d 872, 874 (Miss. 1976). If a remittitur in any amount is awarded, the plaintiff will then have the option of accepting the reduced award or going to trial again on the issue of damages alone. *Odom,* 606 So. 2d at 122.

¶24. After a thorough review of the evidence, we find that the trial court did not abuse its discretion in refusing to grant a remittitur. Mrs. Vinson presented sufficient evidence to support the award of compensatory damages and the appellants' actions were sufficiently egregious to warrant a punitive damages award.

¶25. **THE JUDGMENT OF THE CIRCUIT COURT OF SMITH COUNTY IS AFFIRMED.**

**COSTS ARE ASSESSED TO THE APPELLANTS.**

**KING, P.J., BRIDGES, MYERS AND BRANTLEY, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., THOMAS AND LEE, JJ. IRVING, J., NOT PARTICIPATING.**

McMILLIN, C.J., DISSENTING:

¶26. I respectfully dissent on the issue that the amount of actual damages returned by the jury was supported by the proof. I would remand for a new trial as to damages only. An award of $200,000 in actual damages for this unfortunate interlude in Vinson's home is, in my view, so excessive as to be unsupportable.

¶27. The plaintiff has the burden of proof as to every element of her claim, including evidence of damages actually suffered attributable to the injurious conduct of the defendants. *Boling v. A-1 Detective & Patrol Service, Inc.*, 659 So. 2d 586, 590 (Miss. 1995). In this case, Vinson's only assertion of damages consists of mental anguish alleged to have arisen as a result of the defendants' invasion of her home. The proof as to the extent of such post-event suffering on her part was not accompanied by any evidence of physical injury or of any substantial mental injury requiring medical or psychological treatment. I would hold that a jury verdict of this magnitude on the evidence of damages contained in this record could only result from a jury having - understandably, perhaps, but nevertheless wrongly - given itself over to passion and prejudice or bias against these defendants. *Rayner v. Lindsey,* 243 Miss. 824, 138 So. 2d 902, 905 (1962).

¶28. This is not to say that the conduct of the defendants was not so egregious as to warrant the consideration and imposition of punitive damages in addition to those actually suffered by Vinson. Nevertheless, an award of punitive damages in an appropriate sum designed both to punish these defendants and deter similar conduct by others in the future is something entirely different from an award of actual damages that is excessive on the available evidence. The fact that punitive damages may be in order cannot be used to gloss over an award of actual damages that finds little or no support in the record based on any reasonable review.

¶29. I would reverse and remand for a new trial on actual damages, at the conclusion of which the jury could, if the trial judge found it appropriate, consider once again the imposition of an additional award by way of punitive damages.

**SOUTHWICK, P.J., THOMAS AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**