KING, C.J.,
dissenting in part:
¶ 27. I respectfully disagree with the majority’s opinion in three areas: (1) the finding that the Mickalowskis violated the terms of the non-compete agreement in selling wholesale tile to Tupelo Lumber; (2) the finding that the Mickalowskis violated the terms of the non-compete agreement with regard to their wholesale activities outside Lee County but within the restricted area; and (3) the finding that the trial court properly awarded compensatory and punitive damages. Accordingly, I dissent.
Wholesale activities within Lee County
¶ 28. With regard to the issue of sales that occurred within Lee County, the trial court concluded that the Mickalowskis violated the agreement with regard to their business relationship with Tupelo Lumber. Specifically, the trial court stated that “the Defendants violated the terms and conditions of Section 6.1.a. dealing with proposed wholesale sales within Lee County when the Defendants failed to notify in writing the Plaintiff regarding the proposed sale to Tupelo Lumber” because a sale to Tupelo Lumber would be in direct competition with Chrestman’s store.
¶ 29. With respect to sales within Lee County, the terms of the non-compete *712 agreement required the Mickalowskis to provide written notice to Chrestman of the opportunity to a right of first refusal on the exclusive right to sell Old World Tile “[bjefore selling any Wholesale Tile to any person or entity inside Lee County, Mississippi. ...” On June 11, 2001, John Mick-alowski sent a letter to Chrestman that stated as follows: “The Purchase and Sale Agreement on Pages 12 and 13 Section 6.1.a. Numbers i, ii, and iii states that you have first right of refusal to purchase and carry all lines of ceramic tile carried by Old World Tile, Inc. Old World Tile, Inc. is now offering you first right of refusal for Lee County on the ceramic tile listed on the following page.” While that letter, which was introduced into evidence, contained no attached pages, John Mickalow-ski testified that he sent his entire price list to Mickalowski, both on that date and subsequently, as products and prices changed. Chrestman did not dispute Mickalowski’s testimony on this issue.
¶ 30. The non-compete agreement further states that once Mickalowski provided such written notice, Chrestman had thirty days to respond and exercise its right of first refusal to carry such lines of tile exclusively. If Chrestman failed to respond, “Seller shall be free to sell same to other purchasers in Lee County, Mississippi; provided, however, that if Purchaser later decides that it wants to carry and purchase any such lines of Wholesale Tile in Lee County, Mississippi, Seller agrees to accept no further orders for said Wholesale Tile from the existing purchaser(s) thereof in said county.” According to the testimony, Chrestman did not respond to the June 11, 2001, letter within the thirty days set forth in the agreement, nor did he ever approach Old World Tile thereafter. Accordingly, in order for the account with Tupelo Lumber to violate the agreement, that account would have had to have been established prior to the expiration of the thirty-day period following the June 11, 2001, letter.
¶ 31. The testimony at trial also demonstrates that Jamie Mickalowski set up the account with Tupelo Lumber more than thirty days from the date of the June 11, 2001, letter. According to the terms of the Purchase Agreement, Jamie Mickalowski agreed to work full-time for Chrestman for one year following the sale of the company. Chrestman purchased the company on July 21, 2000, and both Chrestman and Jamie Mickalowski testified that she fulfilled her obligation to work for Chrestman for one year — until July 21, 2001. Although there was no testimony as to the date of the establishment of the Tupelo Lumber account, Jamie Mickalowski could not have established the account any earlier than July 22, 2001, a date following the expiration of the thirty-day notice period on Chrestman’s right of first refusal. Accordingly, there is no substantial evidence to support the trial court’s finding that the Mickalowskis violated Section 6.1.a. of the covenant not to compete regarding sales within Lee County.
¶ 32. The majority finds that the Mick-alowskis violated Section 6.1.a because the initial letter and the updated price lists were not sufficient to satisfy the notice requirement. The majority then cites Section 6.1.b. in support of that finding. This interpretation of the Mickalowskis’ notice obligations is inconsistent with a plain reading of the contract. Section 6.1.a. defines the Mickalowskis’ restrictions for sales within Lee County, while Section 6.1.b. defines the Mickalowskis’ restrictions for sales outside Lee County but within the restricted area. The contractual obligations set forth in these two sections are separate and distinct and are clearly defined. To apply the more stringent notice requirements of Section 6.1.b. of the non-compete agreement to the type *713 of sales defined in Section 6.1.a. ignores the most basic concepts of contract law. See generally A & F Props., LLC v. Madison County Bd. of Supervisors, 933 So.2d 296, 301(¶ 12) (Miss.2006) (outlining basic contract interpretation principles such as the “four corners rule” and a plain reading of clear and unambiguous terms) (citations omitted).
Wholesale activities outside Lee County but within the restricted area
¶ 33. The non-compete agreement prevented Miekalowski from selling wholesale tile to businesses outside Lee County but ■within a fifty-mile radius of Chrestman’s store in those areas where Chrestman had established a retail presence. Miekalowski was called to testify as an adverse witness and later testified during the presentation of his own case. In that testimony, he admitted to selling wholesale to several businesses that existed outside Lee County but within a fifty-mile radius of Chrest-man’s store without first providing notice to Chrestman. Miekalowski stated, however, that his price lists served as right of first refusal. Miekalowski further testified that over the course of the five-year non-compete agreement, he sold approximately $350,000 in wholesale the to those entities.
¶ 34. Chrestman testified that he advertised throughout most of Northeast Mississippi, which would encompass the fifty-mile radius area, and that approximately half of his business could be attributed to customers within the Northeast Mississippi area. No advertisements or customer records were presented to the trial court as evidence, but Miekalowski did not dispute Chrestman’s claims. Miekalowski testified, however, that in order for the restriction to apply, he believed that Chrestman would have been required to open retail locations in each of those areas, as the term “retail presence” referenced a briek-and-mortar building. Counsel for Miekalowski also argued to the trial court that the term “retail presence” required a physical location for the business as a matter of law, while Chrestman’s counsel argued that the term “retail presence” was satisfied by proof of advertising to a particular geographic area.
¶ 35. The trial court determined that the Mickalowskis violated the terms of the non-compete agreement for failure to provide notice of wholesale activities outside of Lee County but within a fifty mile radius “of the Wholesale Territory, in which Purchaser establishes a retail presence.” The trial court concluded that Old World Tile’s sales to Perry’s at Booneville, Earl Owens, Southland, CoUier-Windham, Booneville Flea Market, Amanda Aust, Leslie’s Floors, and Wren’s Carpets all violated this term of the non-compete agreement because, according to the trial court, these sales were made outside Lee County “but within the 50 mile wholesale . radius.” The trial court also held as a mátter of law that the term “retail presence” did not require Chrestman to establish physical locations for his business in order to claim a “retail presence.”
¶ 36. The trial court held as a matter of law thát the language of the agreement established that American Flooring did have a retail presence within fifty miles of its location at the time of the sale in July 2000. The trial court also found that Chrestman’s testimony that he advertised within the restricted area and drew 50% of his customer base from the restricted area, as well as John Mickalowski’s admission that he did not provide notice of any of the proposed sales within the restricted area, provided substantial evidence for the trial court to conclude that the Mickalowskis violated that provision of the covenant not to compete.
¶ 37. The terms of the agreement between the parties do not define the phrase *714 “retail presence,” and a nationwide search of case law revealed no cases defining the term “retail presence.” Counsel for Mick-alowski presented internet news clippings, mostly regarding cellular companies, which inferred that the term “retail presence” meant a physical location. Chrestman’s counsel argued that to- require a physical location within each county in the Northeast Mississippi area would be unfeasible and would result in an absurd reading of the contract.
¶ 38. I agree with the trial court that under the terms of this contract, the phrase “retail presence” does not require a brick-and-mortar building in each county in which Chrestman claimed a retail presence. Chrestman testified that he advertised in the fifty-mile radius surrounding his physical location and that fifty percent of his customer base came from outside Lee County. While I would have preferred documentary proof of such advertisement, in the form of a Yellow Pages advertisement or newspaper ads or invoices from other advertising outlets, I have to concur with the majority that Chrestman’s testimony, which was undisputed, does constitute substantial evidence that Chrestman had established a “retail presence” in those areas outside Lee County in which Old World Tile contracted its wholesale business.
¶ 39. I disagree with the majority’s holding, however, that the trial court correctly interpreted the contract to find that Chrestman had established a “retail presence” in July 2000 when he purchased the business from the Mickalowskis. Interpretation of the terms of a contract is an issue of law subject to de novo review by this Court. See IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 108(¶ 50) (Miss.1998). The covenant not to compete reads in pertinent part as follows:
Purchaser shall have the exclusive right of first refusal, in its sole discretion, to carry for retail sale and to purchase from Seller any and all lines of the Wholesale Tile in any area outside of Lee County, Mississippi but within the remainder of the Wholesale Territory [the fifty-mile radius from the current location of the business], in which Purchaser establishes a retail presence.
(emphasis added). The phrase “in which the Purchaser establishes a retail presence” indicates that at the time of the agreement, Chrestman had not yet established a retail presence but that he intended to do so. Accordingly, in order for Mickalowski to provide notice of proposed sales in those areas in which Chrestman had established a “retail presence,” Chrestman was required to first give Mickalowski notice that he had, in fact, established a retail presence in those areas. The evidence in the record does not establish that Chrestman ever communicated to Mickalowski that he had established a retail presence in any area outside of Lee County; therefore, Mickalowski could not have known to provide Chrest-man with notice of proposed sales.
¶ 40. Section 6.1.b, regarding sales outside of Lee County, does require Micka-lowski to give notice of each proposed sale of tile, but only after a condition precedent is met. Before Mickalowski can be said to have an obligation to notify Chrestman, Chrestman must first establish a retail presence in that area. Because Chrest-man had not engaged in retail tile sales prior to the date of the contract, the contract cannot be interpreted to mean that Chrestman already had a “retail presence” in the fifty-mile radius outside Lee County. If the term “retail presence” does not mean a separate physical location, then of necessity, some notice to Mickalowski of Chrestman’s claims of a “retail presence” in the restricted area must be given in *715 order for Miekalowski to know that he had this obligation under the contract.
¶ 41. Only the actual establishment of a retail presence triggered the obligation of notice and the right of first refusal under the contract. Chrestman testified that he spent advertising dollars in the restricted area and that approximately half of his sales came from the restricted area outside Lee County. Chrestman’s statements were the sum of the testimony on the establishment of a retail presence outside Lee County. As a practical matter, I cannot conclude that Miekalowski, as a resident of Lee County and a stranger' to Chrestman’s business practices, had knowledge of Chrestman’s retail presence based on Chrestman’s evidence. Accordingly, without some notice from Chrestman or some proof that Miekalowski had actual knowledge of Chrestman’s retail presence, it is illogical to conclude that Chrestman met the condition precedent contained in Section 6.1.b. and that Mickalowski’s failure to give notice constituted a violation of the non-compete agreement.
¶42. The majority further interprets Mickalowski’s testimony to mean that Miekalowski admitted that his failure to provide notice of those sales was an admission that he had violated the agreement. Counsel for Chrestman elicited testimony from Miekalowski during Chrestman’s case-in-chief in which Miekalowski admitted that he did not provide notice of sales within the restricted area. Miekalowski also admitted that Chrestman had some rights to notice under the terms of the contract. Mickalowski’s testimony as a whole, however, demonstrates that Micka-lowski did not provide notice to Chrestman of those sales outside Lee County because he did not believe that Chrestman had a retail presence outside Lee County. Mick-alowski testified that he interpreted the phrase “retail presence” to mean a store, an actual physical location. While the trial court ultimately determined that “retail presence” is not defined under the terms of this contract as a brick-and-mortar building, such an interpretation does not automatically lead to a conclusion that Miekalowski violated the terms of the non-compete. Only the completion of the condition precedent, the actual establishment of a “retail presence,” triggered Mickalow-ski’s obligation to provide notice.
Damages
¶'43. Miekalowski also appeals the trial court’s decision to award $90,000 in compensatory damages, $25,000 in punitive damages, and $17,871.42 in attorney’s fees. Miekalowski argues that the evidence does not support these damage awards. In reviewing the award of damages, I recognize that “it is primarily the province of the jury [and in a bench trial the judge] to determine the amount of damages to be awarded and the award will normally not ‘be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.’ ” Lewis v. Hiatt, 683 So.2d 937, 941 (Miss.1996).
¶ 44. The parties agreed in the Purchase Agreement that the five-year covenant not to compete had a value of $90,000. The $90,000 award for compensatory damages reflects the trial court’s conclusion that Chrestman received absolutely no value for the covenant not to compete, although the trial court does not state her reasoning for the award. Based on the evidence received at trial, I find that the trial court’s conclusion was not based on the evidence and is unreasonable. Accordingly, I would remand the case for the trial court to re-evaluate the amount of damages to be awarded. Based on my analysis on the issues of violation of the non-compete, cf necessity, the trial court would *716 be required to re-evaluate the award of punitive damages as well.
¶ 45. The majority does not address the issue of attorney’s fees but upholds the award. I agree with the trial court’s decision to award attorney’s fees, but because the majority failed to address this issue in its opinion, it is unclear why the majority upholds that award; therefore, I write to explain my support of the trial court’s decision. Mississippi law states that attorney’s fees may be awarded only in the following instances: when a contract or statute so provides or when an award of punitive damages is proper. See Hamilton v. Hopkins, 884 So.2d 695, 700(¶ 16) (Miss.2003). The Purchase Agreement explicitly provides in Section 6.6 that “[i]n the event that either party elects to incur legal expenses to enforce or interpret any provision of this Agreement, the prevailing party will be entitled to recover such legal expenses, including, without limitation, reasonable attorneys’ fees, costs and necessary disbursements, in addition to any other relief to which such part shall be entitled.” Accordingly, an award of attorney’s fees to Chrestman, as the prevailing party, was proper so long as that award was reasonable. I agree with the trial court that the award of $17,871.42 in attorney’s fees is not unreasonable; therefore, I would not disturb the trial court’s award of attorney’s fees.
Conclusion
¶46. I disagree that Chrestman presented substantial evidence that the Mick-alowskis failed to provide the required notice to Chrestman with regard to wholesale activities within Lee County. I also disagree that the evidence was sufficient to prove that the Mickalowskis failed to provide the required notice of wholesale activities outside Lee County but within the restricted area. The obligations of that provision of the non-compete were not triggered without notice from Chrestman that he had established a “retail presence” in that area, and while Chrestman presented evidence that he had established a “retail presence” through the use of advertising and gave testimony regarding his sales in that restricted area, there is no evidence that Miekalowski was aware of Chrest-man’s “retail presence.” The signing of the non-compete, by itself, is not sufficient notice to Miekalowski that Chrestman established a “retail presence.” To the contrary, the plain language of the contract identifies Chrestman’s “retail presence” as a condition precedent not yet established. Finally, I disagree with the trial court’s decision to award the entire value of the non-compete agreement as compensatory damages and to award punitive damages. The evidence does not establish that Chrestman received no value from the non-compete agreement, nor is it clear that the award of punitive damages was proper. For the foregoing reasons, I respectfully dissent.
CHANDLER AND ISHEE, JJ., JOIN THIS OPINION.